# AFFIDAVIT OF CYRIL SHROFF

CITY OF MUMBAI

REPUBLIC OF INDIA

I, Cyril Shroff being duly sworn, depose and say:

1.  I am a citizen of the Republic of India ("India") and reside at 67 Roopam, Worli Sea Face, Mumbai-400030, India. I am the Managing Partner of the Law Firm, Cyril Amarchand Mangaldas. I have been requested to provide this opinion by International Finance Corporation ("IFC") in connection with *Budha Ismail Jam, et al. v. International Finance Corporation*, No. 1:15- cv- 00612.

2.  I received a LLB degree from Government Law College, Mumbai in the year 1982. I was admitted to the bar in Mumbai in the year 1982, and have been practicing law in India for 33 years. I am a Solicitor of the High Court of Bombay, since 1983. I also registered as an Advocate on Record of the Supreme Court of India in the year 1984. I am fluent in English.

3.  I am personally familiar with the matters stated below, which are set forth to the best of my knowledge and understanding. I have also read the Complaint in the case of *Budha Ismail Jam, et al. v. International Finance Corporation* and am familiar with the allegations made in it.

4.  Subject to the assumptions and qualifications I submit, the contents of this Affidavit are a true statement of my opinion as to matters of Indian Law.

1



## I. Instructions

5. I am instructed by the Washington D.C. office of White & Case LLP, a law firm retained by IFC. IFC is an international organization which is a member of the World Bank Group. India is one of the 184 member countries of IFC.

6. According to the Complaint, the plaintiffs Budha Ismail Jam, a fisherman, Kashubhai Abhrambhai Manjalia, a fisherman, Sidik Kasam Jam, a fisherman, and Ranubha Jadeja, a farmer, are all residents of Gujarat, India. Complaint ¶ 13.

7. According to the Complaint, the plaintiff, Machhimar Adhikar Sangharsh Sangathan ("MASS"), is a non-profit organisation with its principal place of business in Bhadreshwar village in Mundra Taluka, Kutch District of Gujarat, India. Complaint ¶ 14. According to the Complaint, MASS is a local trade union, registered in 2011 under the Trade Union Act of India, and is a constituent of National Fishermen Forum of India. Complaint ¶ 14.

8. According to the Complaint, the plaintiff, Navinal Panchayat, is a local government entity, which has been authorised to file cases on behalf of its members. Complaint ¶ 15.

9. The plaintiffs allege that the Tata Mundra Ultra Mega Power Plant ("Tata Mundra Plant") in the Kutch District of Gujarat, developed by Coastal Gujarat Power Ltd ("CGPL"), a subsidiary of Tata Power, has caused

2

environmental damage to the nearby coastal region and has made the groundwater more saline. Complaint ¶¶ 2, 111, 248. They allege that these farmers and fisherman are dependent upon this natural environment for their survival. Complaint ¶ 3. The plaintiffs allege that despite knowing of these communities and their vulnerability due to their dependence on their local environment, IFC still provided funding for the project. Complaint ¶ 3. They further allege that the project would not have gone forward without the funding from IFC. Complaint ¶ 3. It is also alleged that IFC failed to take sufficient steps or exercise due care to prevent and mitigate harm to the property, health, livelihood and way of life for many of the people who live near the Tata Mundra Plant. Complaint ¶ 4. The plaintiffs have sought equitable and injunctive relief. Complaint ¶ 343.

10. I have been instructed to provide my professional opinion on (1) the availability of the Indian courts as a proper forum for the resolution of the plaintiffs' allegations, and (2) the merits of the claims under Indian law.

11. The statements made by me in this affidavit are based on my review of only the Complaint filed in this case.

12. For the purpose of this affidavit, I have made the following assumptions, without making any investigation thereof:

   (a) That the copies of documents submitted to me are complete and accurate copies of the originals; and

3



(b) That the signature and seal on the Complaint submitted to me are genuine.

13. For the purposes of this affidavit, I am also assuming that the plaintiffs' factual allegations are true, although I have made no investigation of them and I understand that IFC will be contesting them.

14. I have not independently verified these assumptions.

15. This opinion is limited to matters of Indian law in force on the date of this affidavit.

## II. <u>Background</u>

16. According to the Complaint, the plaintiffs are seeking compensatory damages, punitive damages, and injunctive relief related to alleged property damage, environmental destruction, loss of livelihoods, and threats to human health. Complaint ¶ 1. The plaintiffs allege that IFC's involvement stems from its partial financing of the Tata Mundra Plant project. Complaint ¶ 2.

## III. <u>Allegations against IFC</u>

17. The plaintiffs claim that IFC failed to take sufficient steps or exercise due care to prevent and mitigate harm to the property, health and livelihood of people who reside in that locality. Complaint ¶ 5. The plaintiffs also allege that IFC was well aware of the adverse social and environmental impact but failed to take sufficient steps. Complaint ¶ 5.

4



18. The plaintiffs base many of their allegations on the loan agreement entered into between CGPL and IFC. They assert that the loan agreement expressly incorporates environmental and social safeguards and that IFC has failed to enforce the covenants contained in the loan agreement *against CGPL*. Complaint ¶¶ 53, 163. It is also alleged that IFC has an obligation to enforce more stringent internationally formulated industry-specific standards. Complaint ¶¶ 121, 172-73.

19. The plaintiffs allege the following harms caused by the Tata Mundra Plant:

A. The alleged thermal pollution discharged into the sea by the Tata Mundra Plant's cooling system has resulted in the decline of critical fish stocks and other marine resources (Complaint ¶ 7).

B. Due to increased salinity caused by the operation of the Tata Mundra Plant, the farmers can no longer use the ground water to irrigate their crops (Complaint ¶ 8).

C. The ground water cannot be used for drinking purposes because of the salinity; hence, the local villagers are now forced to purchase fresh water for consumption (Complaint ¶ 8).

D. Coal dust and fly ash periodically cover homes, crops, salt resources and fish laid out to dry. Complaint ¶ 9. The dust and ash contaminates dry fish thereby reducing their value. Complaint ¶ 9.

5

E. The air quality in the area has been substantially degraded. Complaint ¶ 10. In the last two years, there has been an increase in cases of asthma and other respiratory problems. Complaint ¶ 10.

F. Enclosure of the premises and construction of the intake and outfall channels have obstructed access to cattle grazing lands and traditional fishing grounds. Complaint ¶ 94.

## IV.   The Indian judicial system is an appropriate forum for the resolution of the plaintiffs' claims

20. India is an adequate, convenient and an appropriate forum for the plaintiffs' claims, where the dispute has arisen and which possesses jurisdiction over the whole controversy.

### 1. Independent judiciary and well-developed jurisprudence

### A. Independent Judiciary

21. India has a well-developed and independent judicial system. Article 50[1] of the Constitution of India, 1950 ("Indian Constitution") provides that the judiciary will be independent of the executive. Similarly, Articles 121[2] and 211[3] ensure the independence of the Supreme Court and High Court judges from legislative interference. Further, Articles 124[4] and 217[5]

---

[1] *Separation of Judiciary from Executive.*
[2] *Restriction on discussion in Parliament.*
[3] *Restriction on discussion in the Legislature.*
[4] *Establishment of the Supreme Court of India.*
[5] *Appointment and conditions of the office of a Judge of a High Court.*

6



ensure that the judges of the Supreme Court of India and High Courts cannot be removed from the office until their age of retirement.

### B. Well Developed Jurisprudence

22. Indian jurisprudence is voluminous, wide, progressive and innovative. Some of the more notable cases include the following.

23. A case was filed by M C Mehta[6] for safeguarding the environment against air pollution caused in the National Capital Region by commercial vehicles. The Supreme Court, taking a pro environment stance, ordered all public transport commercial vehicles on the roads of Delhi to convert to cleaner fuel or CNG. The conversion was to be done as per the deadlines set by the court. The court also directed that registration of commercial vehicles be restricted to only those running on clean fuel, after April 1, 2001.

24. In a landmark case on social equality,[7] the Supreme Court of India formally recognized transgender as the "third gender" and afforded them equal rights in the society. It was held that the Indian Constitution mandates gender neutrality and that no person shall be denied equality before the law or equal protection of the law. The Supreme Court also emphasised the need to guarantee the freedom of speech and expression to the transgender community and their right to dignity.

---

[6] *M.C Mehta Vs Union of India and Ors. (2001)3SCC756*
[7] *National Legal Services Authority Vs Union of India (2014)5SCC438*



25. Another case where the Supreme Court was innovative in their judgment was the Vodafone tax dispute.[8] The Indian tax authorities raised an approximate USD 2 Billion capital gains tax demand on Vodafone over the taxability in India of offshore transfers of shares, having underlying assets in India. The dispute involved an acquisition of a non-resident Indian company by another non-resident Indian company, resulting in the indirect acquisition of a company located in India. The Supreme Court reversed the decision of the Bombay High Court which affirmed the claim of the tax authorities that the tax demand was justifiable as the transaction had a nexus with India. The Supreme Court held that the Indian tax authorities did not have territorial jurisdiction to tax the offshore transaction as neither were the companies located in India nor had the transaction taken place in India nor the consideration for the transaction passed in India.

26. In a case involving a complex issue of jurisdiction of the Indian courts on foreign seated arbitrations, the Supreme Court, in the case of Balco,[9] held that the Indian courts would not have jurisdiction to grant interim relief to parties, who have chosen the seat of arbitration at a location, which is outside India. This judgment ensured minimal legal interference in arbitrations conducted outside India and inspired the confidence of international companies investing in India.

---

[8] *Vodafone International Holdings (B.V.) Vs Union of India (2012)6SCC613*
[9] *Balco Aluminum Company and Ors. Vs Kaiser Aluminum Technical Services, Inc and Ors. (2012)9SCC552*

8



27. In the case of Mohd. Arif,[10] the Supreme Court was confronted with the question of whether a review of the death penalty – only instituted in the rarest of rare cases – shall be disposed of in the privacy of the chambers of the judges or in open court. As per the rules of the Supreme Court, all review petitions shall be decided in chambers. A constitutional bench of the Supreme Court held that the review of death penalty cases shall be heard by a three judge bench of the Supreme Court and that the necessity of an open court hearing is an integral part of 'reasonable procedure.'

28. In the landmark Novartis Case,[11] the Supreme Court upheld the rejection of a product patent application by the Indian Patent Office (Comptroller General of Patents Design and Trademark). A patent application was for the anti-cancer drug GLEEVEC by Novartis. The Supreme Court rejected the appeal holding that the new form of a drug must demonstrate an improvement in its therapeutic effect or curative property as compared to the old form in order to secure a patent.

2. **Availability of a specialized and well-equipped Tribunal with dedicated jurisdiction in environmental matters – The National Green Tribunal**

29. The issue of setting up special environmental courts was first raised by the Supreme Court of India in the 1986 MC Mehta Case.[12] The Supreme Court recommended that environmental courts shall be established at the

[10] *Mohd. Arif Vs The Registrar of the Supreme Court of India (2014)9SCC737*
[11] *'Novartis AG Vs Union of India (UOI) and Ors AIR (2013) SC 1311*
[12] *M.C. Mehta vs. Union of India: 1986(2) SCC 176*



state level. The Supreme Court further recommended that such environmental courts shall have a professional judge and two experts, for the effective assessment of scientific data involved in such cases. The need to establish environmental courts, consisting of environmental scientists and persons technically qualified to give expert advice on environmental issues, was also discussed in the first AP Pollution Board judgment.[13]

30. In a subsequent AP Pollution Board judgment,[14] the Supreme Court discussed the differences in the constitution of the various appellate authorities formed under environmental legislation.[15] The Supreme Court recommended that the Law Commission shall examine the disparity amongst these quasi-judicial bodies and suggest a new scheme to bring in uniformity.

31. Subsequently, in the 1996 Indian Council for Enviro-Legal judgment[16] the Supreme Court observed that environmental courts having civil and criminal jurisdiction must be established to deal with environmental issues in an effective manner. As a consequence, the Law Commission, in its 186th Report, recommended the establishment of an 'Environment Court' by the Union Government in each state. The Law Commission also made this recommendation in order to implement the decisions taken at the

---

[13] *A.P Pollution Board vs. M.V Nayadu: 1999(2) SCC 718*
[14] *A.P Pollution Board vs. M.V Nayadu: 2001 (2) SCC 62*
[15] *Water (Prevention and Control of Pollution) Act, 1974 and Air (Prevention and Control of Pollution) Act, 1981)*
[16] *Indian Council for Enviro-Legal Action vs. Union of India, 1996(3) SCC 212*



International Conferences held at Stockholm and Rio de Janerio in 1972 and 1992 respectively, in which India was a participant.

32. Eventually, in 2010, the National Green Tribunal Act ("Act") was enacted, establishing the National Green Tribunal ("NGT"), which is dedicated to resolving environmental matters in India. The NGT has jurisdiction to try only civil cases.

33. The Indian government has set up the NGT in different zones in India under the Act. [17] The NGT specifically hears all cases relating to environmental protection and conservation of forests, including enforcement of any legal right relating to the environment.[18] The NGT also gives relief and compensation to persons due to environmental hazards.[19] It is a specialized body equipped with the necessary expertise to handle environmental disputes involving multi-disciplinary issues.[20] NGT can also adjudicate tort claims, e.g., negligence, as a part of allegations of environmental violations.

34. The NGT was created by an act of parliament. The NGT was created, in part, to give effect to India's commitment to provide an expeditious and expert remedy against environmental violations after the United Nations Conference on Environment and Development in June 1992.[21] In fact, in a

---

[17] *Section 4 of the National Green Tribunal Act, 2010*
[18] *Section 14 of the National Green Tribunal Act, 2010*
[19] *Section 15 of the National Green Tribunal Act, 2010*
[20] *Section 4 and 5 of the National Green Tribunal Act, 2010*
[21] *An Act to provide for the establishment of a National Green Tribunal for the effective and expeditious disposal of cases relating to environmental protection and conservation of forests and*

11



recent decision by the NGT regarding the Vizhinjam International Seaport Project,[22] the NGT held that it possesses complete powers of a civil court including the power of judicial review. In the same judgment, the NGT also asserted its independence from the Ministry of Environment and Forests ("MoEF").

35. The legal system in India provides not only an adequate forum but also a special forum to decide actions brought for damages and for corrective measures relating to the environment.

36. Expeditious Disposal: The preamble to the Act reflects the object of the Act, which mandates "effective and expeditious disposal of cases".[23, 24] It is directed to dispose of cases within six months from the date of filing.[25] Hence, delays are curtailed.

37. This is also verified by the empirical data: 91 cases were decided by the NGT in 2012, 154 cases in 2013 and 362 cases in 2014.[26]

38. Jurisdiction and Powers: The Act confers wide and exclusive jurisdiction on the NGT to adjudicate alleged violations which affect the community at large or gravely endanger environment, property or public health.[27] Further, the NGT is vested with all powers of a civil court including

---

other natural resources including enforcement of any legal right relating to environment and giving relief and compensation for damages to persons and property and for matters connected therewith or incidental thereto.
[22] Wilfred J Vs MoEF (M.A. No. 182 of 2014)
[23] See pmbl. The National Green Tribunal Act, 2010 (No. 19 of 2010).
[24] See id. s. 19(3)
[25] See id. s. 18(3)
[26] World Wildlife Fund, Statistical Representation of National Green Tribunal
[27] See id. s. 14

12



summoning and enforcing attendance, requisitioning discovery and the production of documents, issuing commissions for examination and granting interim orders and injunctions, ordering relief and compensation and imposing penalties for non-compliance.[28]

39. <u>Composition of the NGT:</u> The NGT has a balanced constitution of both judicial members and experts from scientific and technical disciplines.[29] The Act authorizes the Tribunal to request assistance of any technical expert with specialized knowledge and experience on a case-by-case basis.[30]

**Jurisdiction and Approach**

40. The NGT has been specifically equipped with the competence to apply environmental laws. Further the NGT can also apply national and international standards of environmental protection.

41. Within the statutory framework of the Act, NGT is specifically empowered to order relief and compensation for the violations of the Water (Prevention and Control of Pollution) Act (1974), Forest Conservation Act (1980), Air (Prevention and Control Pollution) Act (1981), Indian National Ambient Air Quality Standards, 2009, and Environment Protection Act (1986) and Biological Diversity Act (2002). In cases relating to pollution and imposition of fines, the principles of

---

[28] *See id. s. 19(4)*
[29] *See id. ss. 4(1)(b) and (c). See also id. s. 5(1) and (2) for qualifications of members*
[30] *See id. s. 4(2)*



*'sustainable development'*, *'inter-generational equity'*, *'precautionary and polluter-pays principle'* and *'public trust doctrine'* have been governing theories in deciding matters before the Tribunal.[31] One of the most significant powers of the Tribunal is the capacity to do "merit review" of orders and clearances granted under all existing environment protection laws.[32] Also, if a project is granted environmental clearance, but is alleged to have not taken mitigating measures in accordance with law, then the NGT undertakes an in-depth scrutiny into the merits and appropriately directs the project proponent to adopt precautionary measures.[33]

42. In appropriate circumstances, the NGT has also directed inspection by its expert members into the functioning of projects.[34]

43. The NGT also examines documentary evidence in the form of affidavits, inspection reports and expert-analysis reports.[35] Further, the NGT evaluates the safety of the project, the structural flaws of the project units, the likely environmental devastation and rehabilitation policies.[36]

---

[31] *s.20, The National Green Tribunal Act, 2010 (No. 19 of 2010); Goa Foundation and Peaceful Society Vs Union of India & Ors. (2014(4) FLT 60); Manoj Misra Vs Union of India, (O.A. No. 6 of 2012)*
[32] *Sudiep Shrivastava Vs Union of India & Ors., (Appeal No. 73 Of 2012)*
[33] *Jaya Prakash Dabral Vs Union of India & Ors.,( O.A. No. 12 of 2011)*
[34] *Krishan Kant Singh & Anr. Vs Union of India & Ors., (O.A. No. 299 of 2013).*
[35] *See id., ¶ 39.*
[36] *Vimal Bhai & Anr. Vs Ministry of Environment and Forest., (Appeal No. 5 of 2011)*

14



## Remedies

44. In some cases, the NGT has directed that an Environmental Clearance be quashed[37] or be kept in abeyance until re-assessment of its environmental impact by the MoEF).[38] The NGT has mandated a range of time-limited and specific directions to polluting industrial units as well as to municipal authorities[39] and devised a system for periodic monitoring and reporting.[40] The NGT has imposed damages for restoration of the environment and remedial measures.[41]

45. Largely, the NGT proceedings are held in English, but the NGT and its regional benches are well equipped to deal with oral submissions in all Indian languages, including Gujarati and Kutchi, and would hire the services on an interpreter, if necessary.

46. Procedure: The NGT is enjoined to follow principles of natural justice[42] and internationally recognized environmental principles of sustainable development, the polluter-pays principle and the precautionary principle in rendering any decision.[43]

47. Accessible Environmental Justice: The Act allows ample scope for any representative body or organization to file an application for relief and

---

[37] *Jeet Singh Kanwar & Anr. Vs Union of India & Ors., (Appeal No. 10 of 2011)*
[38] *M. P. Patil Vs Union of India & Ors. (Appeal 12 of 2012)*
[39] *Krishan Kant Singh & Anr. Vs Union of India & Ors., (O.A. No. 299 of 2013)*
[40] *Neel Choudhary Vs State of Madhya Pradesh & Ors. (O.A 18 of 2013)*
[41] *The Forward Foundation & Ors. Vs State of Karnataka & Ors.,(O.A. No. 222 of 2014)*
[42] *See id. s. 19(1)*
[43] *See id. s. 20*



compensation.[44] Moreover, it exempts economically weak persons or their representative organizations from filing the prescribed court fee.[45] This ensures that marginalized putative classes can conveniently approach the NGT.

## V.   Analysis of the plaintiff's allegation under Indian Law:

48. I have noted that in the Complaint allegations have been made under the doctrines of (1) negligence, (2) nuisance, and (3) trespass. Based on the claims as alleged in the Complaint, the Indian courts are obviously the proper forum for their adjudication; however, the claims are unusual because the defendant is not the owner or operator, but only a lender. I am not aware of any case or statute that would permit a lender to be held liable for these torts under the circumstances alleged in the complaint.

49. Moreover, in India, the Plaintiffs would be required to bring these types of claims, i.e., claims of environmental degradation based on the actions of the operator, before the NGT, which would then analyze the Plaintiffs' allegations under the Act. Apart from allegations of violations of environmental laws, plaintiffs may also assert tort theories of negligence, trespass or nuisance. While considering a case, the NGT may also decide matters under tort theories wherever there are gaps in specific statutory provisions.

---

[44] *See id. s. 18(2)(e)*
[45] *See r.12, National Green Tribunal (Practices and Procedure) Rules, 2011*

16



50. I provide an analysis of the claims contained in the Complaint below under, (1) strictly common law theories of tort, and (2) as cases have been decided by the NGT (using the mixed approach of common law theories and specific statutory provisions):

## A. Negligence

**Common Law Theory of Negligence**

51. A claim for negligence is well-defined under Indian law. The Supreme Court provided the following essential elements for an action of negligence: (i) duty of care, (ii) the duty is owed to the plaintiff, and (iii) the duty has been carelessly breached. Whether there is a liability in the given situation depends on causation of damage and foreseeability of that kind of damage. The duty is an obligation recognized by law to avoid conduct fraught with unreasonable risk of damage to others. Breach of duty is concerned with the standard of care that ought to have been adopted under the circumstances.

52. A defendant may be held liable for negligence even if, unintentionally, he or she omitted to do that which a reasonable person would have done, or he or she does that which a person taking reasonable precautions would not have done. However, in order for a *failure to act* to satisfy this standard, there must be a *duty to act*.

53. When the defendant did not know of the discoverable defect or danger and it caused the damage by accident like the sudden fall of a tree, it would be

17



difficult to construe negligence due to remoteness of causation and foreseeability. In *Rajkot Municipal Corporation* v. *Manjulben Jayantilal Nakum & Ors.*,[46] a road-side decayed tree fell on the Respondent's husband who sustained injuries and later died in the hospital. The Respondent filed a suit against the Municipal Corporation seeking damages. It was contended that the Corporation was under a statutory duty to maintain trees in a healthy condition subjecting them to periodical examination. It was further contented that the Corporation did not take reasonable care to foresee such a risk and was therefore, guilty of negligence. On appeal, the issue before the Supreme Court of India was whether the Corporation was negligent. The Supreme Court held that the Corporation was not guilty of negligence as the causation was too remote and it was difficult to foresee that a tree would fall on someone.

54. I am aware of the elements of negligence, which are recognized by the Supreme Court of India. However, in my opinion, under Indian law no duty is cast upon the lender, under the theory of negligence to ensure that the borrower does not violate environmental norms. Since the duty does not lie with the lender, the question of breaching the duty does not arise.

**NGT on Negligence**

55. In *Vitthal Gopichand* v. *Gangakhed Sugar And Energy Ltd.*,[47] the complainant who belonged to a community of fishermen filed an

---

[46] *Rajkot Municipal Corporation v. Manjulben Jayantilal Nakum & Ors (1997)9SCC552*
[47] *Vitthal Gopichand Bhungase Vs The Gangakhed Sugar And Energy Ltd. , (O.A. No. 30 of 2013)*

18



application against the defendants, who were operating industrial plants in an ecologically sensitive vicinity. The applicant alleged discharge of untreated effluents into lake water in violation of environmental regulatory norms. Such activities resulted in deteriorated water quality in the lake and the loss of fisheries. Upon reviewing the evidence, the NGT concluded that the water contamination occurred due to the spillage of molasses from a storage tank. The NGT held that the improper construction of the storage tank and lack of necessary scientific management by the defendants resulted in the spillage. Hence, the defendants were held liable for gross negligence on account of their failure to ensure appropriate construction and proper maintenance of the industrial plant.[48] Based on my review of this judgment, I conclude that this theory would not apply to IFC as a lender because it does not own or operate the industrial plants. My further review of other precedent also has not revealed any authority to conclude that a lender can be held liable for a borrower's violation of environmental laws or its contractual obligations.

## B. **Nuisance**

### **Common Law Theory of Nuisance**

56. A claim of nuisance is based on a wrongful act, which causes annoyance to the community. Further, Nuisance must be a continuing wrong. Based on these holdings, I can conclude that an operator of the plant can be liable

---

[48] *Ramubhai Kariyabhai Patel & Ors. Vs Union of India & Ors., (O.A. No. 87 of 2013)*



for nuisance if it is established that the operator is continuously releasing polluted air and water in the community. In *Wali Uddin* v. *State of Uttar Pradesh & Anr.*,[49] the Court observed that the essence of the tort of nuisance is the interference with enjoyment of land. Nuisance is a continuing wrong and consists of the establishment or maintenance of some state of affairs which cont*inuously causes the escape of noxious things* into the plaintiff's land. Public nuisance is some unlawful act, or failure to discharge some legal duty, which causes any common injury, danger or annoyance to public or people in general who occupy the property in the vicinity of the nuisance.

57. In *Ushaben* v. *Bhagyalaxmi Chitra Mandir*,[50] the Supreme Court of India held that the elements of the tort of nuisance are: *"(1) wrongful act; (2) damage or loss or inconvenience or annoyance caused to another."*

58. In *Balwant Singh* v. *Commissioner of Police*,[51] the Appellant was aggrieved by the frequent protests and processions carried out by thousands of protestors near his residence. It was alleged that the indiscriminate use of loudspeakers for delivering speeches, irrespective of the time, caused noise pollution and disturbed the residents. The Supreme Court examined the issue in relation to noise pollution caused to the public at large. The Court concluded that nuisance in any form which results in ffecting anyone's personal or property rights is recognized in the law of



[49]*Wali Uddin v. State of Uttar Pradesh & Anr 1988(12)ACR1*
[50] *Ushaben v. Bhagyalaxmi Chitra Mandir AIR 1978 Guj 13*
[51] *Balwant Singh v. Commissioner of Police (2015)4SCC801*



20

torts. This gives a person a cause of action to seek remedial measures against those who are guilty of *causing* such nuisance.

59. My review of precedent has not revealed any authority to conclude that a lender can be held liable for the nuisance caused by a borrower.

**NGT on Nuisance**

60. In ***Kehar Singh v. State of Haryana,***[52] the complainant invoked the jurisdiction of the NGT regarding the establishment of a Sewage Treatment Plant ("STP"). The complainant contended that the establishment of an STP near a residential colony and religious places would create environmental problems and result in a public nuisance. The NGT held that the *operation* of such a plant in close proximity to residential houses can result in tremendous health hazards and cause injury to the environment including intolerable odour and unnecessary nuisance to the residents. Of course, the complainants brought their claims against the *operator* of the plant, not the plant's lenders.

61. Similarly in ***S.K. Shetye v. Ministry of Environment and Forests,***[53] the NGT observed that the *operation* of the Municipal Council's Solid Waste Processing Plant was conducted un-scientifically, and caused pollution, nuisance and damage to the environment. Therefore, the NGT directed the defendant to ensure that precautionary measures be adopted in order to avoid nuisance and smell.

---

[52] *Kehar Singh v. State of Haryana (Application 124o f 2013)*
[53] *S.K. Shetye Vs Ministry of Environment and Forests (O.A. No. 17 & 20 of 2013)*

21



62. Again, this case involved owner-operators, and not their lenders.  Based on the judgment, a lender would not be liable under these circumstances.

## C. Trespass

### Common Law Theory of Trespass

63. Trespass signifies every direct, intentional or negligent transgression into another person's property without any right or lawful authority even though no actual damage may be done. Moreover, it includes a person who enters a property in possession of another with permission or consent but remains upon such land even after the revocation of such permission.

64. In *Laxmi Pawar v. Sitabai Balu & Anr.*,[54] the Appellant was permitted by the Respondent to temporarily reside within the disputed premises. Subsequently, upon expiry of two months, the Appellant was requested to vacate the premises. However, the Appellant refused to vacate and the Respondent initiated legal proceedings against the Appellant for eviction. The Respondent contended that the Appellant was in unlawful possession of Respondent's property as a trespasser.

65. Based on the ruling above, if it is proven that a plant or a project has encroached into the land owned by a complainant, then the claim for trespass might succeed. However, this analysis does not extend liability to a *lender* to the plant or the project.

---

[54] *Laxmi Pawar v. Sitabai Balu & Anr. AIR 2011 SC 450*

22





**NGT on Trespass**

66. The doctrine of trespass has only been discussed when there was an actual physical encroachment into the plaintiff's land. My research on the issue of trespass has only revealed cases that involved trespass onto forest land owned by the government. The cases culminated into an order passed by the NGT directing the relevant department to take action against the trespasser.[55] However, under the general doctrine of trespass, I have not found any case where a lender has been found liable for the act of trespass committed by a borrower.

**E.     Conclusions on Viability of Claims**

67. To summarize the matters fully detailed above, I believe that even if the matters set forth in the plaintiffs' papers were to be taken as true, their claims against IFC would fail under Indian law.  Fundamentally, there is no legal basis for asserting these claims against a lender, such as IFC, to an allegedly offending property owner or facility operator.

Sworn by the said                              )

Cyril Shroff                                    )

This 1st day of July 2015                        )

..............................................

---

[55] *Neeraj Chourasiya Vs State of M. P.,(O.A. No. 28/2014)*

BEFORE ME

B. D. JAISWAL
B.A. (SPL) DBM.LLB
ADVOCATE HIGH COURT &
NOTARY GOVT. OF INDIA
D/113, Om Vrundavan, CHS. Ltd.
M. P. Road, DOMBIVLI (W) 421 202.
DIST. THANE MAHARASHTRA

23