**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| BUDHA ISMAIL JAM, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| *v.* | ) | Civil Action No. 1:15-CV-00612-JDB |
| | ) | |
| INTERNATIONAL FINANCE CORPORATION, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**DEFENDANT INTERNATIONAL FINANCE
CORPORATION'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

**WHITE & CASE** LLP

Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Dana E. Foster (D.C. Bar No. 489007)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

*Counsel for International Finance
Corporation*

October 16, 2015

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................1

I.   UNDER THE IOIA AND RELEVANT, BINDING AUTHORITY, THIS
     COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS'
     CLAIMS ...................................................................................................................1

     A.   IFC's Immunity From Suit Is Statute-Based, Absolute, And Subject Only
          To Waiver Or Abrogation By The Executive Branch .............................................2

     B.   The President Has Not Abrogated IFC's Immunity .................................................4

     C.   *Atkinson* Remains Vigorous Precedent In This Court .............................................5

     D.   IFC Would Not Have To Subject Itself To Plaintiffs' Suit To Achieve Its
          Chartered Objectives...............................................................................................6

          1.   IFC's Articles Of Agreement Guide This Court's Analysis Of The
               Corresponding Benefit Test .......................................................................6

          2.   Waiver Of IFC's Immunity Would Hinder IFC's Chartered
               Objectives ................................................................................................9

          3.   Waiver Of IFC's Immunity Does Not Provide IFC With Any
               Corresponding Benefit .............................................................................10

          4.   IFC's Interpretation Of The Scope Of Its Waiver Is Entitled To
               Judicial Deference....................................................................................15

II.  PLAINTIFFS FAIL TO REBUT MOST OF IFC'S ARGUMENTS THAT THIS
     COURT MUST DISMISS THE COMPLAINT UNDER THE DOCTRINE OF
     FORUM NON CONVENIENS ..................................................................................15

     A.   India Is An Available Forum For The Resolution Of Plaintiffs' Claims...............16

     B.   India Is An Adequate Forum For The Resolution Of Plaintiffs' Claims...............17

     C.   India Is A Preferred Forum For The Resolution Of Plaintiffs' Claims ................18

III. RULE 19 REQUIRES THAT THIS CASE BE DISMISSED.........................................19

IV.  PLAINTIFFS' CONFUSION AS TO WHICH LAW APPLIES TO THEIR OWN
     CLAIMS DOES NOT SAVE THEM FROM RULE 12(b)(6).........................................22

     A.   Plaintiffs' Breach Of Contract Claim Must Be Dismissed ...................................22

B.      Each Of Plaintiffs' Non-Contract Claims Against IFC Must Be Dismissed .........23

C.      Plaintiffs Have Not Salvaged Their Claim For Nuisance Under District Of
        Columbia law Or Indian Law ..............................................................................24

## TABLE OF AUTHORITIES

Page(s)

<u>Case**s**</u>

*Almendarez-Torres v. United States*,
    523 U.S. 224, 237 (1998)..............................................................................................3

*Anderson v. D.C. Housing Auth.*,
    923 A.2d 853 (D.C. 2007) ..........................................................................................23

*Atkinson v. Inter-Am. Dev. Bank*,
    156 F.3d 1335 (D.C. Cir. 1998) ........................................................................... passim

*Banco de Seguros del Estado v. International Finance Corp.*,
    No. 1:06-2427, 2007 WL 2746808 (S.D.N.Y. Sept. 20, 2007) .........................14, 15

*Broadbent v. OAS*,
    628 F.2d 27 (D.C. Cir. 1980) ................................................................................2, 4, 5

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) ....................................................................................19

*Castillo v. Shipping Corp. of India*,
    606 F. Supp. 497 (S.D.N.Y. 1985)..............................................................................17

*Childs v. Purll*,
    882 A.2d 227 (D.C. 2005) ..........................................................................................24

*Cobell v. Norton*,
    310 F. Supp. 2d 77 (D.D.C. 2004)..............................................................................24

*Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*,
    569 F.3d 189 (4th Cir. 2009) ......................................................................................17

*Connor v. Great W. Sav. & Loan Ass'n*,
    69 Cal. 2d 850 (1968) .................................................................................................24

*Dawavendwa v. Salt Water Project Agric. Improvement*,
    276 F.3d 1150 (9th Cir. 2002) ....................................................................................20

*District of Columbia v. Beretta, U.S.A., Corp.*,
    872 A.2d 633 (D.C. 2005)...........................................................................................25

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003)......................................................................................................5

*Dujardin v. Int'l Bank for Reconstruction & Dev.*,
    9 F. App'x 19 (D.C. Cir. 2001)............................................................2, 3

*Glenny v. Am. Metal Climax, Inc.*,
    494 F.2d 651 (10th Cir. 1974) .....................................................................20

*Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*,
    264 F. App'x 13 (D.C. Cir. 2008)..............................................................2, 3

*Jonathan Woodner Co. v. Breeden*,
    665 A.2d 929 (D.C. 1995)............................................................................24

*Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Inc. Ltd.*,
    No. 00-9214, 2003 WL 1751780 (S.D.N.Y. Apr. 1, 2003) .............................23, 24

*Kamel v. Hill-Rom Co.*,
    108 F.3d 799 (7th Cir. 1997) .......................................................................16

*Laker Airways, Inc. v. British Airways, PLC*,
    182 F.3d 843 (11th Cir. 1999) .....................................................................21

*Lexington Ins. Co. v. Forrest*,
    263 F. Supp. 2d 986 (E.D. Pa. 2003) ..........................................................19

*Lykins v. Westinghouse Elec.*,
    710 F. Supp. 1122 (E.D. Ky. 1988) .............................................................20

*Mendaro v. World Bank*,
    717 F.2d 610 (D.C. Cir. 1983)........................................................... passim

*Milanovich v. Costa Crociere, SpA*,
    954 F.2d 763 (D.C. Cir. 1992).....................................................................22

*Nyambal v. Int'l Monetary Fund*,
    772 F.3d 277 (D.C. Cir. 2014) ................................................................2, 3, 6

*OSS Nokalva v. European Space Agency*,
    617 F.3d 756 (3d Cir. 2010)...........................................................................6

*Osseiran v. International Finance Corp.*,
    552 F.3d 836 (D.C. Cir. 2009)...........................................................13, 14, 15

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)..........................................................................15, 18, 19

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
    390 U.S. 102 (1968)......................................................................................21

*Roeder v. Islamic Republic of Iran*,
  646 F.3d 56 (D.C. Cir. 2011) ............................................................4, 5

*RSM Prod. v. Freshfields Bruckhaus Deringer*,
  682 F.3d 1043 (D.C. Cir. 2009) ...........................................................23

*Song fi, Inc. v. Google Inc.*,
  72 F. Supp. 3d 53 (D.D.C. 2014) ..........................................................23

*Temple v. Synthes Corp.*,
  498 U.S. 5 (1990)...............................................................................20

*Texas v. United States*,
  798 F.3d 1108 (D.C. Cir. 2015) .........................................17, 18, 19, 21

*Two Shields v. Wilkinson*,
  790 F.3d 791 (8th Cir. 2015) ...............................................................21

*United States v. Bestfoods*,
  524 U.S. 51 (1998).............................................................................23

*Vila v. Inter-American Investment Corp.*,
  570 F.3d 274 (D.C. Cir. 2009) ........................................................13, 14

*Wannall v. Honeywell, Inc.*,
  284 F. Supp. 2d 15 (D.D.C. 2003) .........................................................18

Statutes & Rules

22 U.S.C. § 288a(b) (2012)........................................................................2

28 U.S.C. § § 1603(b)(2) (2012)................................................................5

28 U.S.C. § 1746.....................................................................................24

Fed. R. Civ. P. 19..............................................................................19, 20

Fed. R. Civ. P 12(b)(1)...............................................................................1

Foreign Sovereign Immunities Act of 1976,
  Pub. L. No. 94-583, 80 Stat. 2891 ......................................................3, 5

L. Civ. R. 7(b) ...............................................................................17, 18, 19, 21

Other Authorities

David B. Hunter, *International Law and Public Participation in Policy-Making at the International Financial Institutions* in *in* INTERNATIONAL FINANCIAL INSTITUTIONS AND INTERNATIONAL LAW 199, 233 (D. Bradlow & D. Hunter, eds. 2010)..............................9

Exec. Order No. 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956) .......................................................3, 4, 5

IFC Articles of Agreement,
    7 U.S.T. 2197 ...................................................................................................................3, 4, 14

Restatement (Second) of Conflict of Laws § 187 ........................................................................22

Restatement (Second) of Contracts............................................................................................23

9 U.S. Dep't of State Foreign Affairs Manual 41.24 Exhibit I ........................................................4

## INTRODUCTION

Rather than offer this Court binding authority to refute IFC's motion, Plaintiffs have (1) responded to IFC's arguments as to *international organizational immunity* with the inapposite law of *foreign sovereign immunity* and urged this Court to ignore binding precedent, (2) ignored IFC's charter language when considering whether Plaintiffs' suit would further IFC's "chartered objectives," (3) largely conceded IFC's *forum non conveniens* arguments, (4) failed to explain why the actual owners and operators of the power facility at issue in the alleged tortious activities are not indispensable, and (5) failed to show that they have stated any viable claims against IFC, who is merely a minority lender to the owners.

Because Plaintiffs have failed to rebut the arguments set forth in the Motion, this Court should dismiss the Complaint in its entirety. Included with this reply are the following:

- The Second Declaration of Mr. Karim Suratgar, dated October 16, 2015;

- The Reply Affidavit of Cyril Shroff, dated October 16, 2015, responding to Plaintiffs' declarations of Ritin Rai and Ritwick Dutta; and

- The Declaration of Dana Foster, dated October 16, 2015, which attaches copies of all of the cases cited by Mr. Shroff in this affidavit and his July 1, 2015 affidavit.

## ARGUMENT

### I.   UNDER THE IOIA AND RELEVANT, BINDING AUTHORITY, THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

As IFC explained in its Memorandum of Law in Support of its Motion to Dismiss (hereinafter, "Mem."), because of the immunity afforded IFC by the IOIA, this Court lacks subject-matter jurisdiction over Plaintiffs' claims; therefore, under Rule 12(b)(1), the Complaint must be dismissed in its entirety.

Plaintiffs concede that the IOIA governs this Court's review of IFC's immunity. Opp. 14. They also concede that, under relevant authority that this Court is commanded to follow, *i.e.*,

the IOIA, *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335 (D.C. Cir. 1998), and *Mendaro v. World Bank*, 717 F.3d 610 (D.C. Cir. 1983), the immunity from suit that IFC enjoys today is the absolute immunity enjoyed by foreign sovereigns in 1945.  Opp. 14-20.

Rather than recognizing this settled precedent, Plaintiffs spill a considerable amount of ink arguing that *Atkinson* and *Mendaro* were either wrongly decided by the D.C. Circuit or abrogated now.  Neither is correct.  This Court should decline the Plaintiffs' invitation to ignore the settled law of this Circuit.

### A.     IFC's Immunity From Suit Is Statute-Based, Absolute, And Subject Only To Waiver Or Abrogation By The Executive Branch

IFC's immunity clearly covers Plaintiffs' claims.  Under the IOIA, IFC "shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments."  22 U.S.C. § 288a(b) (2012).  As an international organization, IFC's immunity is absolute.  *Atkinson*, 156 F.3d at 1341 (D.C. Cir. 1998) (concluding that "Congress's intent was to adopt that body of law only as it existed in 1945—when immunity of foreign sovereigns was absolute."); *Nyambal v. Int'l Monetary Fund*, 772 F.3d 277, 281 (D.C. Cir. 2014) (ruling that "international organizations 'enjoy . . . immunity from suit and every form of judicial process . . . except to the extent that such organizations . . . expressly waive their immunity.'" (quoting *Atkinson*, 156 F.3d at 1337)); *Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*, 264 F. App'x 13, 15 (D.C. Cir. 2008) (noting that "the immunity conferred upon international organizations by the IOIA is absolute"); *Dujardin v. Int'l Bank for Reconstruction & Dev.*, 9 F. App'x 19, 20 (D.C. Cir. 2001) ("The court recently interpreted [22 U.S.C. § 288a(b)] to grant international organizations absolute immunity from all lawsuits and claims."); *Broadbent v. OAS*, 628 F.2d 27, 31 (D.C. Cir. 1980) ("As of 1945, [the IOIA] granted absolute immunity to international organizations, for that was the immunity then enjoyed by foreign governments.").

Plaintiffs' Opposition is largely an exposition on *foreign sovereign* immunity under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Pub. L. No. 94-583, 80 Stat. 2891 (codified as amended in scattered sections of 28 U.S.C.), that is unrelated to international organizations, the IOIA, or IFC's Articles of Agreement. Opp. 14-20. Each of Plaintiffs' cases deals with claims against a foreign sovereign (or official), the Department of State's view of that sovereign's immunity and, for the post-1976 cases, the application of the FSIA. *Id.* at 15.

This body of law, including the FSIA, is inapplicable to international organizations. IFC's immunity is conferred by the IOIA and its Articles of Agreement, not the FSIA. Under the IOIA, the President — not the State Department — designated IFC as a public international organization. Exec. Order No. 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956). IFC's Articles of Agreement were codified at 7 U.S.T. 2197. These statutes confer absolute immunity on IFC, subject only to waiver or abrogation by the Executive Branch. Plaintiffs' suggested framework for analysis wholly ignores the applicable law. Opp. 14-16.

Remarkably, Plaintiffs assert: "No D.C. Circuit case has considered this post-*Atkinson* [foreign sovereign] authority and nonetheless found immunity in 1945 to be absolute." Opp. 16. Perhaps so. But, like the FSIA, this is "'beside the point'" for two reasons. *Atkinson*, 156 F.3d at 1342 (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998)). First, the D.C. Circuit has affirmed *Atkinson*'s finding of absolute immunity several times. *See, e.g.*, *Nyambal*, 772 F.3d at 281; *Inversora*, 264 F. App'x at 15; *Dujardin*, 9 F. App'x at 19. Second, these cases did not consider Plaintiffs' "post-*Atkinson* authority" because it is not relevant for the consideration of an international organization's immunity, which is governed by the IOIA.

This Court should decline Plaintiffs' invitation to consider a wholly separate body of law in consideration of IFC's immunity under the IOIA and its Articles of Agreement.

### B.      The President Has Not Abrogated IFC's Immunity

Plaintiffs concede that IFC's immunity has not been abrogated by Congress.  Opp. 24.
Further, IFC's immunity under the IOIA and the Articles of Agreement has not been "modified,
conditioned, or revoked" by the President.  *Mendaro*, 717 F.2d at 614.  The United States made
an explicit commitment under Article VI, Section 10, of IFC's Articles of Agreement to "mak[e]
effective in terms of its own law" IFC's jurisdictional immunities.  Zeidan Decl. Ex. 1 at 12.
Any such abrogation of an explicit commitment must be expressed in a clear and plain statement.
*See Roeder v. Islamic Republic of Iran*, 646 F.3d 56, 58 n.2 (D.C. Cir. 2011).  There has been no
such statement.

Plaintiffs cite two items from the appellate record of *Broadbent v. OAS*, 628 F.2d 27
(D.C. Cir. 1980), in an attempt to show that IFC only enjoys some form of "restrictive
immunity."  Opp. 17-18.  One item is a letter from a State Department official stating that OAS
is covered by the IOIA and that, for 17 years, State Department officials "have not been filing
suggestions of immunity in international organization cases."  Herz Decl. Ex. 11.  Nothing in this
letter, of course, relates to IFC's immunity.  In fact, the State Department has no role regarding
the status of international organizations, which immunity is confirmed directly by the President
through Executive Order.  *See* Exec. Order No. 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956); *see
also* 9 U.S. Dep't of State Foreign Affairs Manual 41.24 Ex. I (list of international organizations
that have been designated by Executive Order pursuant to various treaties or under the IOIA).

The other item that they rely on extensively is an amicus brief filed by the United States
in the same appeal.  Herz. Decl. Ex. 12; Opp. 18.  Yet, even with the United States advocating
for "restrictive immunity," the Court refused to accept that position.  *Broadbent*, 628 F.2d at 32-
33 (considering arguments for the application of both absolute and restrictive immunity and
deciding, "We need not decide this difficult question of statutory construction.  On either theory

–4–

of immunity absolute or restrictive an immunity exists sufficient to shield the organization from lawsuit on the basis of acts involved here."); *see id*. at 33 ("We discuss the narrower standard of restrictive immunity not because it is necessarily the governing principle . . . .").

Neither of these 35-year-old court filings represents an abrogation of IFC's immunity. *See Roeder*, 646 F.3d at 58 n.2.  Nor do they in any way undermine Executive Order No. 10680, which was not at issue in *Broadbent*.

### C.     *Atkinson* Remains Vigorous Precedent In This Court

Plaintiffs quote selectively from *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), an FSIA case, to assert that the D.C. Circuit's statutory interpretation of the word "is" in *Atkinson* was wrong.  Opp. 19.  Plaintiffs are mistaken.   In *Dole*, the Court considered whether the defendant was properly considered a foreign state instrumentality under the FSIA.  538 U.S. at 476-77.  Because the company's board majority was once held by a foreign state, but later was not at the time of the suit, the question was whether the company could still benefit from § 1603(b)(2).   *Id*.   Reading the FSIA's plain language *in context*, the Court concluded that the foreign sovereign must hold a majority of board seats at the time of suit.  *Id*.

*Dole*'s interpretation was that "is" should be interpreted to create harmony with other jurisdictional rules relating to the identity and location of parties at the time of suit.  *Dole*, 538 U.S. at 478-479.  Similarly, *Atkinson* interpreted "is" consistently with the IOIA's context, which it determined showed that international organizations are absolutely immune.  *See Atkinson*, 156 F.3d at 1341.  *Dole* would only abrogate *Atkinson* — as Plaintiffs suggest — if it stated something to the effect of "the IOIA's plain language and context demonstrate that international organization immunity is to be determined by reference to the FSIA."  But in fact, it says nothing about the IOIA, and neither has the Supreme Court in the past 17 years following *Atkinson*.  *Atkinson* remains good law.

In footnotes, Plaintiffs cite *OSS Nokalva v. European Space Agency*, 617 F.3d 756 (3d Cir. 2010), as authority in opposition to *Atkinson*.  Opp. 16 n.5, 18 n.7, 20 n.10.  It is not, and the D.C. Circuit has explicitly said so.  *See Nyambal*, 772 F.3d at 281 ("In light of the Third Circuit's decision in *OSS Nokalva, Inc. v. European Space Agency* . . . [plaintiff] nonetheless requests this Court to 'revisit' its decision in *Atkinson v. Inter–American Dev. Bank* . . . and narrow the scope of IOIA sovereign immunity for international organizations.  We decline to do so.  *Atkinson* remains vigorous as Circuit law; international organizations 'enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations [ ] expressly waive their immunity.'" (quoting *Atkinson*, 156 F.3d at 1337).

### D.  IFC Would Not Have To Subject Itself To Plaintiffs' Suit To Achieve Its Chartered Objectives

IFC has not waived its immunity to Plaintiffs' claims because, under the test set forth in *Atkinson*, it would not be necessary for IFC to subject itself to Plaintiffs' suit in order to achieve IFC's chartered objectives.  Contrary to Plaintiffs' assertions, IFC's publication of policies on environmental and social sustainability does not waive IFC's immunity to Plaintiffs' claims.

### 1.  IFC's Articles Of Agreement Guide This Court's Analysis Of The Corresponding Benefit Test

Plaintiffs concede that the IFC Loan Agreement does not waive IFC's immunity.  Opp. 20-32 (failing to cite the loan agreement as a source of IFC's alleged waiver).  They also concede that the creation and operation of the CAO does not waive IFC's immunity.  Opp. 13-14, 23-24; *see also* Hunter Decl. ¶ 15 ("The establishment of the CAO was not dependent on any particular view of the rights of communities to bring actions against the IFC in judicial forums or on the potential immunity of IFC to community-based lawsuits.  CAO was never intended to reflect, nor

does it change, any underlying rights of judicial access that complainants may or may not have toward the IFC.").

In fact, the sole source of any potential waiver of immunity must be found in IFC's Articles of Agreement.  In that regard, any "facially broad waiver of immunity contained in [an international organization's] Articles of Agreement must be narrowly read in light of both national and international law governing the immunity of international organizations." *Mendaro*, 717 F.2d at 611; *see also Atkinson*, 156 F.3d at 1338.  *Mendaro* concerned the Articles of the World Bank, which are analogous in relevant part to those of IFC.  *Compare Mendaro*, 717 F.2d at 614 (quoting the World Bank's waiver provision, article VII, § 3) *with* Zeidan Decl. Ex. 1 at 11.

As explained by the Court in *Mendaro*, waivers apply only to the claims of "debtors, creditors, bondholders, and those other potential plaintiffs to whom the [international organization] *would have to subject itself* to suit in order to achieve its *chartered objectives*." *Mendaro*, 717 F.2d at 615 (emphasis added); *see also Atkinson*, 156 F.3d at 1338.  *Mendaro* highlights two important aspects of this test for the waiver of absolute immunity that Plaintiffs overlook.

First, the Court used mandatory language:  the international organization "*would have to*" subject itself to suit.  *Mendaro*, 717 F.2d at 615 (emphasis added).  It is not enough that Plaintiffs' suit would provide *any* purported benefit Plaintiffs can drum up; instead, their suit must provide such a benefit without which IFC would essentially be prevented from functioning as intended.  *Id.* at 617 (finding that "most waivers are probably effected when an insistence on immunity would actually *prevent or hinder* the organization from conducting its activities.") (emphasis added).

Second, *Mendaro* and *Atkinson* require not simply that waiver from immunity to a lawsuit — a lawsuit, in the present case for example, potentially seeking significant damages — benefit IFC; rather, the benefit must be in the furtherance of IFC's *chartered objectives*. Contrary to Plaintiffs' selective quotation, *Mendaro* did not hold that international organizations waive their immunity for all "'actions relating to its external activities.'"  Opp. 21, 31 (quoting *Mendaro*, 717 F.2d at 621).  On the contrary, the reference to "external activities" specifically related to the World Bank's charter:  "It is thus clear that the *Bank's articles* waive the Bank's immunity from actions arising out of the Bank's *external relations with its debtors and creditors*."  *Mendaro*, 717 F.2d at 618 (emphasis added); *see also id.* at 620 ("[W]e think it evident that Article VII section 3 only restricts the Bank's immunity to actions arising out of its *external commercial contracts and activities.*") (emphasis added).

As set forth in its Articles of Agreement, IFC's objectives are: (i) to "assist in financing the establishment, improvement and expansion of productive private enterprises"; (ii) "to bring together investment opportunities, domestic and foreign private capital, and experienced management"; and (iii) "to stimulate, and to help create conditions conducive to, the flow of private capital, domestic and foreign, into productive investment in member countries."  Zeidan Decl. Ex. 1 at 1.  The proper test, therefore, looks only at IFC's chartered objectives and, as explained by Mr. Karim Suratgar, "IFC has not waived and would not waive its immunity to the type of suit that the plaintiffs have brought in the above-captioned matter, i.e., a suit by individuals with no claimed or even contemplated commercial relationship with IFC for alleged damages caused by the alleged environmental impact of an investment, because such suits do not provide any corresponding benefit to IFC and would hinder IFC in carrying out its purpose."  Second Suratgar Decl. ¶ 9.

Rather than consider IFC's Articles of Agreement, Plaintiffs cherry pick vague language referring to IFC's "intent to 'do no harm'" and goal of "reducing poverty" from IFC's environmental and sustainability policy documents as somehow creating a waiver of IFC's immunity.  They do not.

The environmental and sustainability policies referenced in the Opposition are not referenced in the Articles of Agreement.  Zeidan Decl. Ex. 1.  As Plaintiffs' witness has written: "Except for the EBRD, no IFI has 'sustainable development' in its mandate; the rest of the IFIs have developed their environmental and social safeguard policies under authorities implied, and not precluded, from their Articles of Agreement."[1]  In fact, the earliest policy cited by Plaintiffs was implemented in 1993, nearly 40 years after the creation of IFC.  *See* Herz Decl. Ex. 6 at 13. It is fair to say that these policies are not essential to IFC's chartered objectives, considering that IFC operated for almost 40 years without them.  Plaintiffs' unsupported assertions about IFC's inability to "function" without these policies (Opp. 22) are belied by this history.

IFC did not intend to waive and did not waive its immunity to the claims of third parties by issuing these — or any other — policies.  Second Suratgar Decl. ¶¶ 11, 13, 17, 19, 21, 23.

## 2. Waiver Of IFC's Immunity Would Hinder IFC's Chartered Objectives

Finding a waiver of immunity to all suits that purport to promote IFC's "intent to 'do no harm'" or goal to "reduce poverty" would hinder — not benefit or promote — the achievement of IFC's chartered objectives of providing lending assistance in developing countries.  Mem. 11 (quoting Zeidan Decl. ¶¶ 66-67).  Potential liability for these types of claims would expose IFC to devastating costs, and produce a considerable chilling effect on IFC's capacity and willingness

---

[1] David B. Hunter, *International Law and Public Participation in Policy-Making at the International Financial Institutions*, *in* INTERNATIONAL FINANCIAL INSTITUTIONS AND INTERNATIONAL LAW 199, 233 (D. Bradlow & D. Hunter, eds. 2010).

to lend money in developing countries.  *Id.*  Indeed, by including a variety of declarations about unrelated IFC projects in other countries, Plaintiffs unwittingly demonstrate that finding a waiver of immunity in cases such as this one would potentially open a floodgate of lawsuits by allegedly aggrieved complainants from all over the world.  *See* Bird Decl. ¶¶ 8-28 (claims from residents of the Bajo Aguan region of Honduras based on a loan to an African palm oil company); Fields Decl. ¶¶ 13-25 (claims from the Peruvian Amazonian communities of Canaán de Cachiyuca and Nuevo Sucre based on an investment in a petroleum company); Genovese Decl. ¶¶ 19-29 (claims from sugarcane workers in Nicaragua based on a loan to NSEL); Watters Decl. ¶¶ 8-13 (claims from villagers in Berezovka, Kazakhstan based on financing to LukOil), 14-15 (claims from citizens of Taman, Russia related to the Russiky Mir II project).

Plaintiffs provide no substantive response to these facts; instead, Plaintiffs ignore the Articles of Agreement and glibly assert that IFC's identified costs and the concomitant chilling effect are "nonsense."  Opp. 26-28.  Plaintiffs' superficiality reveals the true nature of their claims, i.e., Plaintiffs believe that they can enforce *IFC's own environmental and sustainability policies* better than IFC can.  *Id.*  No court has ever found that an international organization benefits from a third party enforcing its own, internal policies against it.

### 3.    Waiver Of IFC's Immunity Does Not Provide IFC With Any Corresponding Benefit

IFC did not waive and would not waive its immunity to claims like Plaintiffs' because such a waiver does not provide IFC with a corresponding benefit in achieving its chartered objectives.  IFC has an internal mechanism to deal with Plaintiffs' potential grievances: the CAO.  The presence of such a mechanism was important in *Atkinson* and *Mendaro*.  Contrary to Plaintiffs' statement (Opp. 28), the courts in those cases did not consider how effective (or ineffective) those mechanisms were.  *See, e.g.*, *Mendaro*, 717 F.2d at 616 n.41.  Thus, Plaintiffs'

contention that the CAO is "fundamentally flawed" (Opp. 28) is not relevant to this Court's consideration of IFC's immunity.

Whether the CAO operates as effectively as Plaintiffs would prefer says nothing about a waiver of IFC's immunity.  The "corresponding benefit" test does not ask *whether* waiver of immunity to a certain cause of action would provide *any* benefit to the international organization.  Instead, the test is a proxy to assist the Court in deciding whether IFC actually *intended* to waive its immunity to such claims.  *See Mendaro*, 717 F.2d at 617 (stating that a court's application of the "corresponding benefit" test to a general waiver provision "should start with" its judgment of whether "the organization actually intended to waive its immunity").

Because of this reality, Plaintiffs' arguments are wholly undermined when they state: "This type of action provides the IFC with the very benefits that it ascribed to the creation of the CAO; only here, those benefits are real, not illusory."  Opp. 24.  With this statement, Plaintiffs state that their action does precisely the same thing that the CAO was already designed to do; therefore, Plaintiffs put themselves squarely on par with the dissatisfied employee in *Mendaro*. In that case, the World Bank had recently established an administrative tribunal to resolve employees' claims based on employment contract disputes; however, the tribunal was created after the events giving rise to Mendaro's claim against the Bank, giving Mendaro no recourse or remedy with the tribunal, which is why she filed a complaint in federal court.  Nonetheless, the Court held:  "Although we sympathize with Mendaro, this factor alone cannot give the court jurisdiction over the World Bank, *since employee dissatisfaction with the efficacy of the administrative remedy is insufficient to dissolve the immunity of international organizations*." 717 F.2d at 616 n.41.  So too Plaintiffs.  Their dissatisfaction with the CAO's operations and arguable lack of remedy are insufficient to somehow waive IFC's immunity.

Moreover, outside Plaintiffs' brief, their evidence regarding the CAO's effectiveness is actually favorable. *See* Opp. 23 (noting that some individuals benefit from CAO involvement); Genovese Decl. ¶¶ 13 ("CAO is one of the most, if not the most, effective IAMs."), 16 ("The CAO's dispute resolution process can result in concrete benefits for complainants."); Herz Decl. Ex. 8 at 31 (quoting Ms. Genovese: "The CAO came and heard their story. But more than that, the sugarcane workers got access to food, medical care, funds for community projects, and a first-rate public health team to determine the cause of the disease. To me, this is what development looks like."), 88 (quoting Mr. Hunter: "The CAO has paved a new path in international dispute resolution and accountability by keeping the focus on the rights and needs of project-affected communities and developing a unique blend of mediation and compliance monitoring."); Hunter, *supra*, at 201 ("The IFIs have even established accountability mechanisms that could be readily adopted to ensure compliance with administrative procedures in policy making. In fact, and rather ironically, because of the close scrutiny IFIs have faced from civil society, IFIs arguably now have the most well-developed practice of public-oriented administrative procedures of any group of international organizations."); *id.* at 232 (referring to accountability mechanisms: "Each of these mechanisms differs to some degree, but they share one common attribute: they all provide local people with an opportunity to seek oversight of the institution's compliance with applicable environmental and social policies.").

There are two key aspects of the CAO that Plaintiffs do not contest, *i.e.*, that the creation of the CAO: (1) did not waive IFC's immunity; and (2) is evidence that IFC did not intend to waive its immunity to Plaintiffs' claims. In fact, Plaintiffs make yet another startling admission:

> *This does not necessarily mean that the IFC has waived immunity for all environmental claims where the IFC has violated its own policies.* But where, as here, *IFC disregards a CAO compliance report*, an enforceable remedy provides the IFC an institutional benefit – the same benefit the CAO was supposed to provide – of assuring host

communities there is some means of redress against the IFC and enforcing the IFC's own core principles.

Opp. 25-26 (emphasis added). With this statement, Plaintiffs concede that (1) the creation of the CAO itself did not waive IFC's immunity from their suit, (2) the creation and issuance of IFC's environmental and sustainability policies did not waive IFC's immunity from their suit, and (3) it is only when, as Plaintiffs allege, "IFC disregards a CAO compliance report" that Plaintiffs should be able to hale IFC into court. *Id.* at 26. In other words, where there is a perceived lack of remedy, IFC should be found to have waived its immunity to suit. There is no support for Plaintiffs' novel legal theory. And, of course, IFC did not "disregard a CAO compliance report" in this case. *See* Zeidan Decl. Exs. 12, 13, 15.

Plaintiffs rely heavily upon the decisions in *Osseiran v. International Finance Corp.*, 552 F.3d 836 (D.C. Cir. 2009), and *Vila v. Inter-American Investment Corp.*, 570 F.3d 274 (D.C. Cir. 2009), because the Court found waiver there. Those cases are clearly distinguishable.

***First***, each of those cases involved a plaintiff with a *direct commercial relationship* with the international organization. In *Osseiran*, the plaintiff was a prospective buyer of one of IFC's investments. 552 F.3d at 837. In *Vila*, the plaintiff was a banking consultant who performed consulting services for the Inter-American Investment Corporation ("IIC") related to IIC's commercial lending practices. 570 F.3d at 277. Each of these plaintiffs' claims was a traditional contract claim based on a course of business conduct with the international organization. *See Osseiran*, 552 F.3d at 838 (listing claims of breach of contract and promissory estoppel); *Vila*, 570 F.3d at 278 (listing claims of breach of implied contract and unjust enrichment). And, most importantly, it was the class of plaintiffs and the types of claims that were dispositive for the court in finding waiver. *See Osseiran*, 552 F.3d at 840; *Vila*, 570 F.3d at 280.

*Second*, each of the plaintiffs' suits implicated *chartered objectives*, not simply an isolated policy or goal of the international organization. Plaintiffs state that waiver in these cases "would help the IFC carry out its mission" (Opp. 25), but it requires far more than that, as mandated by *Mendaro* and *Atkinson.* In *Osseiran*, the IFC charter provision was that IFC "shall seek to revolve its funds by selling its investments to private investors whenever it can appropriately do so on satisfactory terms." 552 F.3d at 837 (quoting IFC Articles of Agreement art. VI, § 3(vi)); *see also id.* at 840 (holding that "a 'corresponding benefit' would promote International Finance's chartered objective of revolving its investments."). In *Vila*, the plaintiff's services "were targeted at the type of commercial lending that the IIC Charter describes as part of the functions that 'the Corporation shall undertake' '[i]n order to accomplish its purpose.'" 570 F.3d at 280 (quoting IIC Charter art. I, § 2).

Unlike in *Osseiran* and *Vila*, Plaintiffs have no legal or commercial relationship with IFC. Plaintiffs repeatedly cite the passage from *Vila* in which the Court observed that "parties may hesitate *to do business with* an entity insulated from judicial process" (Opp. 21, 22, 30 (emphasis added) (quoting *Vila*, 570 F.3d at 280)), but IFC does not do business with Plaintiffs. They fall well outside the type of plaintiff and the type of claim over which IFC did waive or would waive its absolute immunity from suit.

In fact, Plaintiffs are most similar to the plaintiffs in *Banco de Seguros del Estado v. International Finance Corp.*, No. 1:06-2427, 2007 WL 2746808 (S.D.N.Y. Sept. 20, 2007), a case that Plaintiffs do not effectively differentiate. Opp. 31 (stating that "plaintiffs and claims" were "totally different from those here"). In that case, (1) plaintiffs had no legal relationship with IFC (*Banco de Seguros*, 2007 WL 2746808, at *5), and (2) plaintiffs' claims were based on IFC's ownership interest in a bank and IFC's alleged failure to supervise the bank's operations

during a time in which the bank allegedly committed several criminal violations (*id.* at *4).   In applying the test from *Mendaro*, the court found that the plaintiffs were not "the type of other 'potential plaintiffs to whom IFC would have to subject itself to suit in order to achieve its chartered objectives.'"   *Id.* at *5 (quoting *Mendaro*, 717 F.3d at 615).   Plaintiffs fail to explain why this Court should not reach the same conclusion regarding them and their claims.

### 4.   IFC's Interpretation Of The Scope Of Its Waiver Is Entitled To Judicial Deference

As IFC stated, IFC's own interpretation of the scope of the waiver set forth under Article VI, § 3, of its Articles of Agreement is entitled to judicial deference.   Mem. 15-16.

In response, Plaintiffs selectively cite *Osseiran*.   Opp. 32.   But Plaintiffs' excerpt cuts off the more relevant portion of the quote.   The next sentence says:   "One might suppose that an organization could mount a case that its judgment about the need for immunity in certain classes of cases was deserving of judicial deference."   *Osseiran*, 552 F.3d at 840.   IFC mounts one such case here, and Plaintiffs cite no authority in response to *Osseiran*'s invitation for such an argument or Mr. Fady Zeidan's sworn declaration in support of it.   *See* Zeidan Decl. ¶¶ 61, 63.

## II.   PLAINTIFFS FAIL TO REBUT MOST OF IFC'S ARGUMENTS THAT THIS COURT MUST DISMISS THE COMPLAINT UNDER THE DOCTRINE OF FORUM NON CONVENIENS

As detailed in the Memorandum of Law, *all* of the complained-of conduct and *all* of the alleged harm occurred in India.   Because India is an available, adequate, and preferred forum, this Court must dismiss the Complaint in its entirety under the doctrine of *forum non conveniens*. An alternative forum is adequate if:   (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy.   *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).   India meets each of these requirements, and Plaintiffs fail to rebut most of IFC's arguments in support thereof.

### A.      India Is An Available Forum For The Resolution Of Plaintiffs' Claims

Plaintiffs argue that there has been no showing that IFC is subject to suit in India.  Opp.
33.  This argument is beside the point, and betrays a misunderstanding of Indian law.  IFC need
not "stipulate" to jurisdiction when Indian law allows IFC to be subject to suit in India; instead, it
is the law of the forum that renders a party amenable to jurisdiction, not the consent of the party.
*See Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (finding that "even without
[defendant's] consent, Saudi law would render [defendant] amenable to Saudi jurisdiction").

If the Court accepts Plaintiffs' allegation as true that IFC does business in India, Indian
courts should be able to exercise jurisdiction over IFC.  As Mr. Shroff explains, on October 17,
2008, the Indian Parliament enacted the International Finance Corporation (Status, Immunities
and Privileges) Act, 1958 ("IFC Act").  *See* Reply Shroff Aff. ¶ 58.  The IFC Act incorporated
IFC's Articles of Agreement into Indian statutory law.  *Id.* ¶ 59.  Section 3 of article VI of the
IFC Act states:  "Actions may be brought against [IFC] only in a court of competent jurisdiction
in the territories of a member in which [IFC] has an office, has appointed an agent for the
purpose of accepting service or notice of process, or has issued or guaranteed securities."  *Id.*

IFC has offices India, and is therefore subject to suit under this provision of the IFC Act.
*See id*.  Mr. Shroff also confirms that India does not have an equivalent statute to the IOIA
imbuing IFC with absolute immunity in Indian courts.  *See id.* ¶ 60.

Plaintiffs' Indian law experts tacitly recognize this.  Mr. Dutta, whose assignment was "to
provide information with regard to the viability of India as a forum for adjudication of Plaintiff's
[sic] claims, and specifically, the National Green Tribunal" (Dutta Decl. ¶ 5), "take[s] no
position on NGT's jurisdiction over these claims" (Dutta Decl. ¶ 6).  Mr. Dutta's non-position
leaves Mr. Shroff's statement that India "possesses jurisdiction over the whole controversy"
unrebutted.  Shroff Aff. ¶ 20; *see also* Reply Shroff Aff. ¶ 57.  In fact, Mr. Dutta later states that

"the NGT Act is controlling" (Dutta Decl. ¶ 16), which appears to be an acknowledgement that India does indeed have jurisdiction over Plaintiffs' claims.

Likewise, Plaintiffs' claims are timely.  As explained by Mr. Shroff, Plaintiffs' claims "would fall under Section 15 of the NGT Act."  Reply Shroff Aff. ¶ 43; *see also id.* ¶¶ 49, 53. Nothing in Mr. Dutta's declaration refutes this simple fact.  At most, Mr. Dutta states that the statute-of-limitations issue would be a "major hurdle," "highly contested," "litigated," and "time consuming."  Dutta Decl. ¶¶ 7, 10.  He does not say that Plaintiffs' claims are time-barred.  And neither do Plaintiffs.  Opp. 33-34.

Finally, even if Plaintiffs' claims are time-barred (which they are not), that would not be a basis for denying the motion.  *See, e.g.*, *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 203 (4th Cir. 2009) (concluding that "knowingly and purposefully opt[ing] to miss the deadline for filing . . . claims in [China]" would defeat the untimeliness argument with respect to the Chinese court's availability as an alternative forum); *Castillo v. Shipping Corp. of India,* 606 F. Supp. 497, 504 (S.D.N.Y. 1985) ("It would be a strange world if a litigant could 'bootstrap' himself into a New York court by missing the statute of limitations in the proper forum.").

### B.      India Is An Adequate Forum For The Resolution Of Plaintiffs' Claims

Indian courts provide an adequate forum for the litigation of Plaintiffs' claims.  Mem. 21-23.  Mr. Cyril Shroff has provided this Court with a detailed affidavit describing the adequacy of Indian courts.  Shroff Aff. ¶¶ 20-47.  Plaintiffs do not address these points at all; therefore, this Court should treat it as conceded that India is an adequate forum.  *See* L. Civ. R. 7(b); *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) (stating that Local Rule 7(b) "is understood to mean that if a party files an opposition to a motion and therein addresses only some of the

movant's arguments, the court may treat the unaddressed arguments as conceded.") (quoting *Wannall v. Honeywell, Inc.*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)).

### C.      India Is A Preferred Forum For The Resolution Of Plaintiffs' Claims

Both the private and public factors in the *forum non conveniens* analysis weigh heavily in favor of India, making India a preferred forum for the resolution of Plaintiffs' claims.

As an initial matter, Plaintiffs note that there is a "substantial presumption" in favor of a plaintiff's chosen forum.  Opp. 34.  However, Plaintiffs fail to acknowledge that, as non-U.S. citizens or residents, their choice of the United States as a forum deserves less deference.  *See Piper Aircraft*, 454 U.S. at 255-56 ("When the home forum has been chosen it is reasonable to assume that this choice is convenient.  When the plaintiff is foreign, however, this assumption is much less reasonable.").  Because this argument is unrebutted, this Court should take it as conceded that the choice of the United States as a forum deserves very little weight.  *See* L. Civ. R. 7(b); *Texas*, 798 F.3d at 1110.

Plaintiffs essentially concede the private-interest factors.  They do not rebut IFC's assertion that "the vast majority of material witnesses and documents bearing on causation, liability, and alleged damages is located solely in India."  Mem. 24.  Plaintiffs speculate — citing no authority — that relevant IFC documents and employees are "here."  Opp. 34.  Plaintiffs have not — and cannot — deny that the factor related to the ease of access to sources of proof weighs heavily in favor of dismissal.

Plaintiffs did not respond to IFC's arguments that (i) none of the material witnesses is subject to compulsory process, (ii) the costs of trial in the United States are prohibitive, (iii) a site visit to the Tata Mundra plant would be expensive and difficult, and (iv) "all other practical problems that make trial of a case easy, expeditious and inexpensive" weigh in favor of the NGT.

Mem. 26.  Because Plaintiffs have not addressed any of these arguments, this Court should also treat them as conceded.  *See* L. Civ. R. 7(b); *Texas*, 798 F.3d at 1110.

Plaintiffs assert that "IFC has not shown that it has assets in India or agreed to satisfy an Indian judgment."  Opp. 34.  There is no such requirement.  Plaintiffs do not offer any evidence on the enforceability of judgments in India (Opp. 35), and the cases that they cite are not relevant.  *See Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1231-32 (9th Cir. 2011) (discussing the enforceability of a judgment in Peru where the defendant's expert "presented compelling evidence of disorder in the Peruvian judiciary"); *Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 995 (E.D. Pa. 2003) (denying dismissal because, even if dismissed, plaintiff "will have to come to before this court if it is to enforce the judgment").

Likewise, Plaintiffs essentially concede the public-interest factors.  Plaintiffs have not — and cannot — deny that India has a strong interest in resolving this dispute (Mem. 26-28), and they do not refute that adjudicating their Indian law claims in a U.S. court would present "unnecessary problems in conflict of laws, or in the application of foreign law."  *Piper Aircraft*, 454 U.S. at 241 n.6.  The difficulties of trying this case in a forum thousands of miles away from the vast majority of the evidence cannot be denied, and Plaintiffs do not even attempt to do so.

## III.   RULE 19 REQUIRES THAT THIS CASE BE DISMISSED

All of the alleged harm was caused by the construction and operation of the Tata Mundra Plant and the Adani Plant; yet, the owners, builders, and operators of those plants and the regulating authority for those plants are absent.  As Plaintiffs concede, each of these entities had (and have) substantially more direct involvement in the Tata Mundra plant's operations than IFC.  Opp. 35-36.  They also concede that their conduct is central to Plaintiffs' cause of action.  *Id*. Because Rule 19 requires their joinder, this Court must dismiss the Complaint in its entirety.

–19–

Contrary to Plaintiffs' assertions (Opp. 35 & n.24), the first prong of the Rule 19 test is not met here because this Court cannot accord complete relief without the borrower and Adani. Plaintiffs seek an affirmative injunction against IFC aimed at abating an alleged nuisance. Compl. ¶ 343. But IFC neither owns nor possesses the nuisance, and an injunction against IFC cannot guarantee that the plants' owners/operators would remedy the alleged harm. *Compare* Compl. ¶ 343(a) (requesting injunctive relief to "[e]nsure that the coal ash pond [and] the coal storage yards at the Mundra port . . . are covered") *with* ¶ 30 (alleging that the Tata Mundra Plant shares coal port facilities with the Adani Plant). Courts have required joinder in cases, like this one, where the plaintiff's requested injunction would not bind an absent party. *See, e.g.*, *Dawavendwa v. Salt Water Project Agric. Improvement*, 276 F.3d 1150, 1155-56 (9th Cir. 2002) (concluding that Navajo Nation was a necessary party where it would not be bound by the injunction plaintiff sought); *Glenny v. Am. Metal Climax, Inc.*, 494 F.2d 651, 653, 654 (10th Cir. 1974) (affirming dismissal on Rule 19 grounds where plaintiffs sought to enjoin a smelter operator under a nuisance theory but failed to join the smelter's owner); *Lykins v. Westinghouse Elec.*, 710 F. Supp. 1122, 1124 (E.D. Ky. 1988) (concluding that landfill owner was necessary party to plaintiff's nuisance suit).

Plaintiffs reflexively invoke the rule that joint tortfeasors are ordinarily not necessary parties. Opp. 35 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). But *Temple* did not establish a blanket rule that Rule 19 is inapplicable to all joint tortfeasors. Without the owners of the alleged nuisance, this Court simply lacks the authority to grant the relief requested.

Likewise, the second prong of Rule 19 is not met because both plant owners/operators have an interest related to the subject of the action, and their absence will impair (i) both the borrower's and Adani's ability to protect their property interests, and (ii) the borrower's

obligations under the IFC Loan Agreement.  Plaintiffs have not effectively responded to IFC's interest analysis under *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-111 (1968).  *See* Mot. 32-34.

As to Plaintiffs' interest in a forum, Plaintiffs reiterate that India is inadequate.  Opp. 36. But IFC has shown that it can be sued in India, and that the statute of limitations is no bar.  *See supra* § II.A; Shroff Reply Aff. ¶¶ 41-60; *see also* Dutta Decl. ¶ 10.  Because there is an alternative forum, Plaintiffs' interest in *a* forum weighs in favor of dismissal.

As to the interests of absent parties, Plaintiffs do not refute that the rights of the plants' owners/operators will be affected.  Opp. 37.  Nor can they.  Although Plaintiffs' injunction would nominally apply to IFC, the plants' owners/operators are the real target; indeed, Plaintiffs seek to impose obligations that would require substantial renovations to or closure of the Tata Mundra plant.  *See* Compl. ¶ 343.  Before determining whether IFC was negligent in allegedly failing to enforce the IFC Loan Agreement, this Court would necessarily have to decide whether the borrower complied with its terms; therefore, it has a clear interest in any decision that interprets its contractual obligations.  *See Two Shields v. Wilkinson*, 790 F.3d 791, 797 (8th Cir. 2015) (holding that the United States, albeit an alleged joint tortfeasor, was a necessary party because it had "interests . . . beyond those of joint and several liability"); *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847-48 (11th Cir. 1999) (finding that joinder was necessary when the interests of the absent party "are more significant than those of a routine joint tortfeasor").

Finally, considerations of consistency and efficiency counsel for dismissal and re-filing in India or England.  Plaintiffs fail to respond to this argument; therefore, this Court should consider it conceded.  *See* L. Civ. R. 7(b); *Texas*, 798 F.3d at 1110.

–21–

## IV.    PLAINTIFFS' CONFUSION AS TO WHICH LAW APPLIES TO THEIR OWN CLAIMS DOES NOT SAVE THEM FROM RULE 12(b)(6)

### A.    Plaintiffs' Breach Of Contract Claim Must Be Dismissed

The IFC Loan Agreement's provision expressly excluding all liability to third-party beneficiaries precludes Plaintiffs' breach of contract claim.  Mem. 35-36.  The parties identified English law as applicable.  Suratgar Decl. ¶ 6 & Ex. 1 at 17.  Such provisions should be enforced unless its application would violate the "'strong public policy of the forum in which suit is brought.'"  *Milanovich v. Costa Crociere, SpA*, 954 F.2d 763, 768 (D.C. Cir. 1992) (quoting *The Bremen*, 407 U.S. 1, 15 (1972)).  This Court should reject Plaintiffs' attempt to encourage this Court to disregard the parties' contract language for two reasons.

*First*, although the District of Columbia applies the "reasonable relationship" test, the choice of law must bear a reasonable relationship to the transaction *or at least one the parties*. *See* Restatement (Second) of Conflict of Laws § 187(2)(a) (1971); *accord* Restatement (Second) of Conflict of Laws § 187 cmt. f (1971) (observing that "[t]he parties to a multistate contract may have a reasonable basis for choosing a state with which the contract has no substantial relationship.  For example, when contracting in countries whose legal systems are strange to them as well as relatively immature, the parties should be able to choose a law on the ground that they know it well and that it is sufficiently developed.  For only in this way can they be sure of knowing accurately the extent of their rights and duties under the contract.").  This test is applied liberally in order to effectuate the freedom of contract and to honor the choice of the parties.  *See Milanovich*, 954 F.2d at 768.  IFC has a substantial relationship to England.  IFC has an office in London, and regularly conducts business there.

*Second*, even if the agreement fails the "reasonable relationship" test, this Court could invalidate the parties' choice-of-law provision only if it determines that a conflict exists between

D.C. and English law regarding the right of contracting parties to exclude liability to third-party beneficiaries.  *See Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 61-62 (D.D.C. 2014).  But District of Columbia law and English law are in accord.  The District of Columbia follows the Restatement (Second) of Contracts, which permits parties to exclude liability from third parties. *See* Mem. 36; *see also Anderson v. D.C. Housing Auth.*, 923 A.2d 853, 862-63 (D.C. 2007).

## B.   Each Of Plaintiffs' Non-Contract Claims Against IFC Must Be Dismissed

Plaintiffs' non-contract claims must be dismissed because Plaintiffs do not allege sufficient facts to establish IFC's liability as a *lender* for the alleged actions of the *borrower*. Utterly lacking are allegations that IFC actually exercised the level of control over the Tata Mundra plant necessary to expose IFC to liability for the activities of the power plant.  *See generally* Compl.

Plaintiffs attempt to bolster their lender-liability claims by re-casting them as direct-liability claims.  Plaintiffs' attempt fails.  They sued IFC because IFC was a minority lender to a plant owner/operator for it to build a power plant in Gujarat, India.  Both in the Complaint and in the Opposition, Plaintiffs offer conclusory allegations about IFC's supposed "supervisory control over the Project" (Opp. 39), but they offer no facts to support them; therefore, they should not be credited.  *See RSM Prod. v. Freshfields Bruckhaus Deringer*, 682 F.3d 1043, 1052 (D.C. Cir. 2009).

Plaintiffs assert that there is no "special immunity" for lenders.  Opp. 40.  Perhaps so. But they offer this Court no case in which a court found a lender liable for failing to enforce its *own* contract provisions.  *See United States v. Bestfoods*, 524 U.S. 51, 64-65 (1998) (analyzing a parent company's alleged vicarious liability under CERCLA for cleanup of site owned by its subsidiary); *Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Inc. Ltd.*, No. 00-9214, 2003 WL 1751780, at *8 (S.D.N.Y. Apr. 1, 2003) (holding a corporation liable for the negligent acts of its

agent); *Childs v. Purll*, 882 A.2d 227, 239-40 (D.C. 2005) (concluding that corporate officers may be individually liable for their negligence); *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 865 (1968) (holding that the lender may be sued for negligence because it induced plaintiffs into purchasing homes with faulty construction).

Regarding Indian law, Mr. Shroff has stated in no uncertain terms that there is "no legal basis for asserting these claims against a lender, such as IFC, to an allegedly offending property owner or facility operator." Shroff Aff. ¶ 67; *see also id.* ¶¶ 54, 56, 63, 66, 68. In response, Plaintiffs offered the unsworn declaration of Ritin Rai. As an initial matter, this Court should disregard Mr. Rai's declaration because it does not comply with 28 U.S.C. § 1746. *See Cobell v. Norton*, 310 F. Supp. 2d 77, 85 (D.D.C. 2004) (Lamberth, J.) ("Indeed, courts have repeatedly emphasized that unsworn statements submitted to the court not in conformity with 28 U.S.C. § 1746 . . . will not be considered.") (citation omitted).

If this Court chooses to consider Mr. Rai's declaration, it will find that he largely agrees with Mr. Shroff regarding lender liability under Indian law; that is, neither of them was able to find a single case finding a lender liable for the acts of a borrower. *Compare* Shroff Aff. ¶¶ 10, 14, 27, 31, 32, 36, 37 *and* Reply Shroff Aff. ¶¶ 10, 14, 15, 16, 25, 27, 31, 32, 35, 37, 40 *with* Rai Decl. ¶ 18.

### C.   Plaintiffs Have Not Salvaged Their Claim For Nuisance Under District Of Columbia law Or Indian Law

Plaintiffs have not stated a claim for nuisance under either District of Columbia or Indian law. In the District of Columbia, "nuisance is a type of damage and not a theory of recovery in and of itself." *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 646 (D.C. 2005) (quoting *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 934 (D.C. 1995)). Nuisance claims also require the defendant to possess "control of the instrumentality alleged to constitute a nuisance, since

without control a defendant cannot abate the nuisance." *Id.* at 648 (quoting *Tioga Pub. School Dist. # 15 v. United States Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993)).

Plaintiffs assert — in conclusory fashion — that IFC "exercised substantial control" over the Tata Mundra plant.  Opp. 43-44.  This assertion is belied by the facts as alleged in the Complaint. IFC had no day-to-day management, and no input on any business decisions.  In short, and as Plaintiffs have acknowledged, IFC was a minority lender.

Regarding India, Mr. Shroff has explained in both of his sworn declarations that claims for public and private nuisance under Indian law may be brought only "against the operator of the plant, not the plant's lenders."  Shroff Aff. ¶ 61; *see* Shroff Reply Aff. ¶¶ 31-37.  Nothing in Mr. Rai's declaration refutes this point.  Rai Decl. ¶¶ 25-45.  Accordingly, under Indian law "a lender would not be liable in these circumstances."  Shroff Aff. ¶ 63; *see also* Reply Shroff Aff. ¶ 37.

## CONCLUSION

For all of these reasons and the reasons stated in the Memorandum of Law, this Court should thus grant IFC's Motion to Dismiss the Complaint and dismiss Plaintiffs' Complaint in its entirety.

Dated: October 16, 2015                                 Respectfully submitted,


                                                        /s/ Francis A. Vasquez, Jr.
                                                        Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
                                                        Dana E. Foster (D.C. Bar No. 489007)
                                                        701 Thirteenth Street, N.W.
                                                        Washington, D.C. 20005
                                                        Phone: (202) 626-3600
                                                        Facsimile: (202) 639-9355
                                                        fvasquez@whitecase.com

                                                        *Counsel for International Finance Corporation*