# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BUDHA ISMAIL JAM, *et al.*,<br>　　　Plaintiffs,<br><br>　v.<br><br>INTERNATIONAL FINANCE<br>CORPORATION,<br>　　　Defendant. | Civil Action No. 15-cv-00612 (JDB) |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND THE COMPLAINT
UNDER RULE 15 OR, IN THE ALTERNATIVE, UNDER RULES 15 AND 59(e)**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................. 1

ARGUMENT ....................................................................................................................................... 2

   I.   The Court should grant Plaintiffs leave to amend under Rule 15. ..................................... 2

      A.  Plaintiffs need not satisfy Rule 59(e). ................................................................... 2

          1.   Plaintiffs may amend because the *complaint* was dismissed without prejudice. .............. 2

          2.   Rule 15 and 28 U.S.C. § 1653 require that amendments of jurisdictional facts be considered under ordinary Rule 15 standards. .................................................................... 5

      B.  Leave to amend should be granted; amendment is neither too late nor futile. .................... 7

          1.   Plaintiffs' motion to amend is not untimely; IFC suffers no prejudice. ......................... 7

          2.   Amendment would not be futile. ...................................................................................... 11

             a.   Plaintiffs adequately allege that IFC's approval of the loan was negligent. ........... 12

             b.   Plaintiffs have adequately alleged that IFC's oversight of the design, construction, and operation of the Tata Mundra Project occurred in the United States. ................................................................................................................ 13

             c.   Plaintiffs have alleged that IFC's decisions in response to the allegations of harm caused by the Tata Mundra Project occurred in the United States. ............. 15

   II.  Alternatively, the Court should grant reconsideration. ................................................... 16

   III. If necessary, Plaintiffs satisfy Rule 59(e). ..................................................................... 17

      A.  Plaintiffs meet the *Brink* test for Rule 59(e) motions to amend the complaint. ................ 17

      B.  Plaintiffs allege clear error sufficient to warrant reconsideration. ........................................ 18

      C.  Reconsideration is necessary to prevent manifest injustice to Plaintiffs ............................. 20

   IV. Jurisdictional discovery may be appropriate to supplement Plaintiffs' allegations. .................. 21

CONCLUSION .................................................................................................................................. 22

## INTRODUCTION

Absent from IFC's Opposition ("Opp.") to Plaintiffs' motion to amend is a denial of any fact pled in the proposed Amended Complaint showing that IFC committed its tortious conduct in the United States. Nor do IFC's previous documents and declarations deny these facts. Instead IFC makes a series of arguments that this Court should ignore all of these facts, and should not apply the legal framework it established to the real facts in this case. Those arguments are meritless.

Plaintiffs need not meet Rule 59(e). Where, as here, a court dismisses only the complaint without prejudice, the Plaintiff may file a new complaint. And 28 U.S.C. § 1653 permits amendments of jurisdictional facts. Under that statute, the ordinary Rule 15 standards apply, even after dismissal.

IFC cannot meet its Rule 15 burden to show amendment is not warranted. IFC claims prejudicial delay, but it can show neither delay nor prejudice. It suggests Plaintiffs should have moved to amend sooner, even though the proposed amendments are not responsive to any argument IFC made. The need to amend did not arise until the Court's Opinion adopted a standard different than the one IFC proposed and identified deficiencies in the Complaint IFC had not raised. Nor can IFC show prejudice; this case is in its infancy and Plaintiffs' amendments only add clarifying facts consistent with the original complaint.

IFC also cannot show amendment is futile. Plaintiffs' allegations show IFC's approval of the loan was negligent, IFC's oversight of the design, construction, and operation of the plant occurred in the U.S., and IFC's negligent responses to allegations of harm to the Plaintiffs were decisions IFC made here. These facts fill the gaps the Opinion found and establish that the gravamen of this suit is IFC's conduct in the United States. IFC argues that some of the evidence of this was in the record, but the Opinion analyzed the Complaint. By seeking to preclude amendment based on what was in the record, IFC is asking this Court not to apply its prior decision, but to rewrite it.

If it is necessary for Plaintiffs satisfy Rule 59(e), they do so. A motion to amend a complaint

under Rule 59(e) must be granted where, as here, the allegations would cure the deficiency. Plaintiffs' motion for reconsideration should be granted because the Opinion contained a clear error – it found certain evidence suggested IFC conduct occurred in India, but overlooked record evidence showing it occurred here. Reconsideration is also necessary to prevent manifest injustice, as adopting a legal standard urged by neither party without allowing Plaintiffs to present facts that meet that standard would be fundamentally unfair.

While IFC's decision not to dispute any of the allegations lessens the need for discovery, if the Court finds that the proposed Amended Complaint lacks sufficient specificity or clarity in places, then discovery is warranted to supplement the allegations.

## ARGUMENT

### I.       The Court should grant Plaintiffs leave to amend under Rule 15.

#### A.  Plaintiffs need not satisfy Rule 59(e).

IFC's assertion that Plaintiffs can only amend their complaint if they first satisfy Rule 59(e) is wrong. Opp. at 4. Under clear D.C. Circuit authority, this is unnecessary. IFC highlights that this case involves a dismissal on jurisdictional grounds, *id.* at 11, but under the statute permitting jurisdictional amendments, Plaintiffs need not meet Rule 59(e).

##### 1.  Plaintiffs may amend because the *complaint* was dismissed without prejudice.

Plaintiffs only need to satisfy Rule 59(e) *if* the Opinion was a final judgment. *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004). But IFC does not dispute that the Court's Opinion dismissed without prejudice. Opp. at 5. And the Opinion on its face dismissed the *complaint*, not the action. ECF No. 61 at 1-2; Mot. at 7. As Plaintiffs noted, where, as here, a court dismisses the complaint without prejudice, "the plaintiff is free to amend his pleading." Mot. at 7 (quoting *Ciralsky*, 355 F.3d at 666). The D.C. Circuit later reiterated that where a district court dismisses only the complaint without prejudice, the Plaintiff can file "a new complaint in his original case." *Cohen v. Bd. of Trs. of*

*the Univ. of the Dist. of Columbia*, 819 F.3d 476, 478-79 (D.C. Cir. 2016).

Indeed, Plaintiffs have a *right* to amend. "We are not aware of any bar that would prevent [plaintiff] from doing so." *Id.* at 484. Thus, the *Cohen* court found that it "need not address whether the district court properly denied [plaintiff's] motion for leave to amend, because . . . [the plaintiff may] simply [] file his proposed amended complaint." *Id.* at 484-85. The *Ciralsky*/*Cohen* rule contols.

IFC cites *Attias v. CareFirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017), but *Attias* does not alter *Ciralsky*'s holding that plaintiffs are "free to amend" a complaint dismissed without prejudice. *Attias* addresses a different question: whether *appellate jurisdiction* lies over such a dismissal where the plaintiff does *not* seek to amend. IFC assumes that these questions are parallel – that an order of dismissal is either final and appealable upon issuance, in which case the plaintiff must satisfy Rule 59(e) to amend, or it is not. But that is not the case.

*Ciralsky* noted that there are "a number of exceptions to the general rule that complaints that are dismissed without prejudice are not appealable" – chiefly, that if the plaintiff elects *not* to amend despite the right to do so, the dismissal is final and appealable. 355 F.3d at 666 n.1; *see also, e.g.*, *Auto. Alignment & Body Serv. v. State Farm Mut. Auto. Ins. Co.*, __ F.3d __, 2020 U.S. App. LEXIS 7044, at *19 (11th Cir. Mar. 6, 2020) (reiterating holding that a dismissal order that allows a plaintiff to amend – and which is therefore not a final judgment at that point – nonetheless "becomes a final judgment" if the plaintiff elects not to amend). Thus, an order can be non-final for the purpose of amendment – such that Rule 59(e) does not apply at that point – but become final for the purpose of appeal if the plaintiff elects not to amend. *Attias*'s consideration of when a judgment is *appealable* does not speak to when amendment is permitted, or change the rule of *Ciralsky* and *Cohen*.

Even *Attias* does not hold, *contra* Opp. at 11, that a dismissal for lack of subject matter jurisdiction is always final for appeal purposes. It actually held that appellate courts "will *presume*, absent a clear indication to the contrary," that such a dismissal is a final, appealable order. 865 F.3d

3

at 624 (emphasis added). That is so because, "in the ordinary case, a dismissal for lack of subject-matter jurisdiction ends the litigation and leaves nothing more for the court to do." *Id.* But the "rule is flexible," and "if the district court intended for the action to continue via amendment of the complaint to allege facts supporting jurisdiction, its dismissal order is not final." *Id.* Since *Attias* did not hold that such a dismissal is always a final judgment, it did not purport to overturn the rule that plaintiffs may amend.

Taken together then, *Ciralsky/Cohen* and *Attias* mean that where a district court dismisses a complaint without prejudice, the plaintiff may amend, but if the dismissal is on jurisdictional grounds, the plaintiff does not seek to amend, and the district court does not indicate that it meant for plaintiff to do so, the Court of Appeals will presume the judgment is final and appealable. Thus IFC's argument that Plaintiffs must meet Rule 59(e) fails; since Plaintiffs have elected to amend, the order is not final for Rule 59(e) or appellate purposes.

Even if the appealability question were relevant, under *Attias*, there is a "clear indication" that the Court did not dismiss the entire case and enter final judgment. In 2016, when the Court dismissed on legal grounds, it "ORDERED that this *case* is dismissed in its entirety." ECF No. 30 (emphasis added). But here, where the Court dismissed on grounds that the complaint was insufficiently specific – and thus, the natural next step is amendment – the Court avoided such language. ECF No. 62.

IFC cites district court cases, Opp. at 4-5, 10, where the court had expressly dismissed the entire "case" or "action" – unlike the situation here.[1] Indeed, while IFC argues that a Rule 59

---

[1] *See Mouzon v. Radiancy, Inc.*, 309 F.R.D. 60, 63 (D.D.C. 2015) (where court dismissed the "action" and entered judgment, plaintiffs conceded they were required to file a Rule 59(e) motion); *Odhiambo v. Republic of Kenya*, 947 F. Supp. 2d 30, 34 (D.D.C. 2013) *aff'd* 764 F.3d 31 (D.C. Cir. 2014) (court dismissed "case"); *Odhiambo v. Republic of Kenya,* 930 F. Supp. 2d 17, 35 (D.D.C. 2013) (earlier order dismissing "action"); *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 74 (D.D.C. 2013) (dismissing "case"). Indeed, Judge Kollar-Kotelly, who decided *Mouzon*, later permitted amendment

motion is required, *De La Fuente v. DNC Servs. Corp.*, No. 18-336, 2019 U.S. Dist. LEXIS 129412, at *4 (D.D.C. Aug. 2, 2019), found it was improper. The court *denied* a Rule 59(e) motion because it had dismissed the complaint without prejudice, not the action, and thus there was no final judgment. Despite the denial of the Rule 59(e) motion, the plaintiff could "still seek leave to amend" under Rule 15. *Id.* (citing *Cohen*, 819 F.3d at 478-79).

In sum, "a district court's dismissal of a complaint without prejudice is 'akin to a grant of leave to amend under'" Rule 15(c). *Id.* at *4-5 (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)). By filing a new complaint in the original case, Plaintiffs are doing exactly what *Ciralsky* and *Cohen* expressly permit. Rule 59(e) does not apply.

### 2. Rule 15 and 28 U.S.C. § 1653 require that amendments of jurisdictional facts be considered under ordinary Rule 15 standards.

Even if this Court could ignore *Ciralsky* and *Cohen*, IFC's argument fails. Where, as here, plaintiffs bring a Rule 15 motion to amend regarding subject matter jurisdiction, courts read "Rule 15(a) . . . together with section 1653 of title 28." *Falise v. American Tobacco Co.*, 241 B.R. 63, 65 (Bankr. E.D.N.Y. 1999) (Weinstein, J). Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Thus, a "failure to allege facts establishing jurisdiction need not prove fatal to a complaint," because a plaintiff "may correct" such failure. *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000) (internal quotation omitted).

"Congress intended [section 1653] to permit amendment broadly." *Swan v. Clinton*, 100 F.3d 973, 980 n.3 (D.C. Cir. 1996) (internal quotation omitted). Thus, where the D.C. Circuit determined, as this Court did, that a pleading did not allege sufficient facts to support jurisdiction, it permitted – in fact directed – the party to amend in additional jurisdictional facts. *Momenian v. Davidson*, 878 F.3d

---

under Rule 15, without applying Rule 59(e), where the *complaint* was dismissed without prejudice. *Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 210 F. Supp. 3d 138, 142-43 (D.D.C. 2016).

381, 389 (D.C. Cir. 2017); *accord DKT Memorial Fund, Ltd. v. Agency for Int'l Dev.*, 810 F.2d 1236, 1239 (D.C. Cir. 1987) (granting leave to amend complaint to remedy appellant's failure to allege a fact possibly necessary to establish standing). This Court should do likewise.

Courts considering jurisdictional amendments under section 1653/Rule 15 apply Rule 15's liberal standard. *E.g.*, *Asset Value Fund Ltd. Pshp. v. Care Group*, 179 F.R.D. 117, 119 (S.D.N.Y. 1998).[2] Indeed, Section 1653 "serves essentially as a specific application of Rule 15." *Id.*; *accord Swartz v. Prudential Healthcare, Inc.*, 78 Fed. Appx. 598, 599 (9th Cir. 2003). The two Rules are "generally synonymous." *Falise*, 241 B.R. at 65.

It makes no difference that this Court has dismissed the complaint. "Courts may permit parties to amend defective allegations of jurisdiction at any stage in the proceedings," including after judgment. *NewGen, LLC v. Safe Cig*, LLC, 840 F.3d 606, 612 (9th Cir. 2016) (permitting plaintiff to amend after judgment in plaintiff's favor to establish jurisdiction). Thus, post-dismissal amendments may be made without regard to Rule 59. For example, the Fifth Circuit reversed a district court's denial of a post-judgment motion to amend, applying the Rule 15 standard and without considering whether Rule 59(e) was satisfied. *Whitmire*, 212 F.3d at 889-90; *see also Falise*, 241 B.R. at 65 (assessing post-judgment motion to amend under Rule15/section 1653, without applying Rule 59(e)).

Indeed, it would make no sense to require Plaintiffs to meet Rule 59(e) here, since Section 1653's "liberal amendment rule" permits a party who has not sufficiently alleged jurisdiction to amend "even as late as on appeal." *Dist. of Columbia v. Transamerica Ins. Co.*, 797 F.2d 1041, 1044 (D.C. Cir. 1986). This Court should not apply a stricter standard for amendment than the D.C.

---

[2] *See also Miller v. Stanmore*, 636 F.2d 986, 990 (5th Cir. 1981) (applying the Rule 15 standard from *Foman v. Davis*, 371 U.S. 178 (1962)); *Vogel v. Go Daddy Grp., Inc.*, 266 F. Supp. 3d 234, 238 (D.D.C. 2017); *see also Canedy v. Liberty Mutual Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997) ("Unless the record clearly indicates that the complaint could not be saved by any truthful amendment, we generally afford an opportunity for amendment.") (internal citation omitted).

Circuit would, if Plaintiffs sought to amend on appeal. Because IFC does not contest the amended allegations, and because these allegations would establish jurisdiction, amendment to show jurisdiction must be permitted. *Id.*

### B. Leave to amend should be granted; amendment is neither too late nor futile.

Under the D.C. Circuit's decision in *Cohen*, Plaintiffs may amend their complaint by *right*. 819 F.3d at 484-85. Accordingly, there is no occasion for the Court to apply Rule 15(a)(2). But even if the Court were to do so, it is no bar to amendment here.

Under Rule 15(a)(2), leave to amend should be liberally granted; IFC bears the burden of coming forward with a basis for barring amendment. *Sodexo*, 210 F. Supp. 3d at 143. IFC claims there is some special rule requiring that Rule 15 motions be "heavily scrutinized" after a final judgment. Opp. at 12. But that argument conflicts with both Section 1653's mandate that ordinary Rule 15 standards apply, and with *Cohen*.

IFC's cases are inapposite, because they are cases in which Rule 59(e) applied. *See Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991); *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000). None suggests there is a heightened Rule 15 standard where, as here, there is no final judgment and Rule 59(e) does not apply. The ordinary, liberal Rule 15 standard controls. IFC cannot meet its burden here.

### 1. Plaintiffs' motion to amend is not untimely; IFC suffers no prejudice.

Plaintiffs' amendments cannot be too late because, as noted above, jurisdictional amendments can be made at any time, even on appeal. In any event, it is IFC's burden to show prejudicial delay, and there is none. Plaintiffs moved to amend promptly once the proposed allegations became relevant in the context of the Court's Opinion; under the arguments made previously by IFC, and the Court's prior dismissal order, these facts would not have mattered.

There is no obligation to add nonresponsive amendments; rather, amendment is timely

where a plaintiff "act[s] with reasonable promptness once potential defects" in the complaint are "brought out into the open." *Estate of Gaither v. District of Columbia,* 272 F.R.D. 248, 252 (D.D.C. 2011).[3] Plaintiffs seek leave to add clarifying facts to address issues the Court identified in its Opinion, but that IFC *never raised.* IFC's first motion to dismiss did not even argue against the commercial activity exception, and its renewed motion did not argue that IFC's tortious conduct occurred outside the United States.[4] Asserting Plaintiffs could have sought "to amend months ago," Opp. at 13, IFC ignores the fact that the proposed amendments are not responsive, nor even relevant, to the "place of injury" or "last act in the causal chain" standard that it advanced. *See* Mot. at 4. The need to amend did not arise until the Court's Opinion, which did "not fully adopt either of the parties' positions," ECF No. 61 at 9, and found the Complaint did not specifically allege that IFC committed tortious acts in the United States.[5] Far from "sit[ting] on their hands," Opp. at 14, Plaintiffs moved to amend as soon as "potential defects" were identified, *Estate of Gaither,* 272 F.R.D. at 252, belying any claim of undue delay. Indeed, IFC concedes that its motion to dismiss made only a "legal-sufficiency challenge" to Plaintiffs' complaint – not a "factual-sufficiency challenge" that could have been cured by amendment. Opp. at 19.

IFC's cases are nothing like this one. In *National Security Counselors v. CIA*, 960 F. Supp. 2d 101, 135 (D.D.C. 2013), the defendant "identified" the "defects" in the complaint in moving to

---

[3] Amending in facts that did not respond to IFC's motions could have multiplied the litigation. Rule 8 requires only a "short and plain statement" of the grounds for jurisdiction, and *Ciralsky* held that the district court did not abuse its discretion in dismissing because the plaintiff pled *too many* facts. 355 F.3d at 669-71. Plaintiffs may have missed the sweet spot on their first try, but that is the sort of thing courts routinely allow plaintiffs to correct.

[4] IFC's cites its prior briefs to suggest otherwise but the quotes it cites have nothing to do with location of IFC's conduct, *see* Opp. at 13, and thus only confirm IFC did not make this argument.

[5] For example, the Court found Plaintiffs' allegations concerning IFC's responses to allegations of harm to be too "general and ambiguous," ECF No. 61 at 21-22, but IFC had never challenged these allegations as ambiguous in its Motion to Dismiss, nor had it sought a more definite statement.

dismiss. In *Williams v. Savage,* 569 F. Supp. 2d 99, 107-108 (D.D.C. 2008), the plaintiff had "chose[n] not to" respond to defendants' motion to dismiss with respect to certain claims, then after dismissal, sought to amend in facts it had had all along to support the claim it conceded.[6] Plaintiffs made no such failings here.

Nor is there prejudice to IFC. "Undue prejudice" is not "mere harm" to the non-movant; it requires "denial of the opportunity to present facts and evidence" that the party otherwise would have offered had the amendment been timely. *Doe v. District of Columbia,* 815 F. Supp. 2d 208, 215 (D.D.C. 2011). *See also In re Vitamins Antitrust Litig.,* 217 F.R.D. 30, 32, 34 (D.D.C. 2003) (non-movant must show "unfairness in procedure or timing"). Such prejudice "may exist when a party would have chosen different counsel or employed a different litigation strategy," or where "a long-delayed amendment would require the parties to conduct substantial additional discovery." *Doe*, 815 F. Supp. 2d at 215 (collecting cases). This is not the case here.

Plaintiffs' amendments do not add new claims nor alter the scope of this action; IFC has known from the original complaint that Plaintiffs are alleging IFC's tortious acts took place in the United States. *See* Compl. ¶¶ 193, 195-99. Plaintiffs seek merely to add facts consistent with the original complaint to address gaps the Court identified and to clarify allegations deemed insufficiently specific. "[L]eave to add clarifying factual allegations to existing claims is typically freely given." *Banner Health v. Burwell,* 55 F. Supp. 3d 1, 13 (D.D.C. 2014)). *See also Council on American-Islamic Relations Action Network, Inc.,* 793 F. Supp. 2d 311, 324 (D.D.C. 2011). And amendments that "clarify . . . without expanding or otherwise altering the scope" of the action "are especially favored." *Estate of Gaither,* 272 F.R.D. at 252. Unlike in the cases IFC cites, Opp. at 14-15,

---

[6] *Diersen v. Chicago Car Exchange,* 110 F.3d 481, 489 (7th Cir. 1997), is even less relevant since it concerned amending in new defendants, but even there the plaintiff had known of these parties "from the beginning of the litigation."

Plaintiffs do not attempt to "rewrite" claims to be "entirely different" than originally alleged, *Nat'l Sec. Counselors,* 960 F. Supp. 2d at 135, nor seek "to add a host of new claims." *Sai v. Transp. Sec. Admin.,* 326 F.R.D. 31, 32 (D.D.C. 2018). And it is particularly hard to see how IFC can be prejudiced by amending in more specific facts now, when Section 1653 permits Plaintiffs to do so later, on appeal. *See Simpson v. Socialist People's Libyan Arab Jamahiriya,* 326 F.3d 230, 233 (D.C. Cir. 2003); *see also Blue Water Balt. v. Pruitt,* 293 F. Supp. 3d 1, 7 (D.D.C. 2017) (noting defendant would arguably suffer greater prejudice if the court denied leave to amend, because plaintiffs would file a separate case).

Moreover, IFC's "claims of prejudice ring particularly hollow," *Council on Am.-Islamic Rels. Action Network, Inc.,* 793 F. Supp. 2d at 326, given that it argues that Plaintiffs are making the "exact same" assertions as in their Opposition to the Motion to Dismiss. Opp. at 13. While this is overstated – the amendments provide substantial new information detailing that IFC committed tortious acts in the U.S. – IFC's own argument "concede[s] that Plaintiffs' proposed amendments do not catch them by surprise or radically reshape this action, let alone deprive them of an opportunity to mount a fair defense." *Council on Am.-Islamic Rels. Action Network, Inc.,* 793 F. Supp. 2d at 326. *Accord Clark v. Feder Semo & Bard, P.C.,* 560 F. Supp. 2d 1, 4 (D.D.C. 2008).

IFC's suggestion that it is prejudiced by being forced to litigate, Opp. at 14, is circular; it depends on IFC having the very immunity to which the Amended Complaint shows it is not entitled. IFC notes the case was filed five years ago and refers generically to the "burdens of litigation." *Id.* at 14-15. But "the ordinary costs and inconveniences" of defending against a lawsuit "fall short" of the showing required, *Council on Am.-Islamic Rels. Action Network, Inc.,* 793 F. Supp. 2d at 325, and "the length of litigation cannot, on its own, justify denying leave to amend," *Johnson v. District of Columbia,* 2015 U.S. Dist. LEXIS 93063, at *6-7 (D.D.C. July 17, 2015). *Accord Caribbean Broad. Sys., v. Cable & Wireless PLC,* 148 F.3d 1080, 1084 (D.C. Cir. 1998) ("The length of a litigation

is relevant only insofar as it suggests either bad faith on the part of the moving party or potential prejudice" if amendment is allowed). Here, most of the time this case has been pending has been spent litigating IFC's absolute immunity argument, which the Supreme Court rejected. IFC cannot claim it was prejudiced by time it spent asserting an ultimately erroneous position.

IFC cites *Sai,* but there the court had issued "eleven memorandum opinions," and despite that, the plaintiff sought "to add a host of new claims." 326 F.R.D. at 32. By contrast, IFC will not suffer any undue prejudice because this case is in its "infancy." *Blue Water Balt.*, 293 F. Supp. 3d at 7. IFC has failed to show either undue delay or prejudice that could warrant denial of leave to amend.

### 2. Amendment would not be futile.

A proposed amendment is futile only if it "would not alter this Court's analysis." *Sierra Club v. United States Army Corps of Eng'rs,* 64 F. Supp. 3d 128, 137 n.5 (D.D.C. 2014). *Accord Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019) (amendment would be futile if "it would not withstand a motion to dismiss.") IFC does not seriously try to make this showing. Indeed, it largely ignores both the specific deficiencies this Court identified in the Complaint and Plaintiffs' new allegations, which directly address the Court's concerns and thus would alter the Court's analysis.

IFC argues that the new allegations are "merely expanded factual arguments from documents already before this Court." Opp. at 15. That is only partially true and wholly irrelevant. Plaintiffs' new allegations come both from facts in the record and facts outside of it that Plaintiffs recently uncovered. But even if it were entirely true, it would not suggest amendment is futile.

The thrust of IFC's argument is that the Opinion *sub silentio* held that no fact anywhere in the *record* supports jurisdiction. But the Opinion dismissed based on deficiencies in the Complaint, not the record.[7] Plaintiffs' new allegations specifically address each of the gaps the Court identified.

---

[7] *E.g.* ECF No. 61 at 18 (Plaintiffs "do not make specific allegations that approving the funding—by itself—was a negligent act."); *id.* at 20 ("The complaint does not allege that IFC's direct involvement in the design, construction, and operation of the power plant occurred in Washington, D.C."); *id.* at

Amendment would thus alter the Court's analysis and would not be futile.

Indeed, the fact that record evidence supports jurisdiction refutes IFC's argument. In such cases, courts permit amendment. *Blue Water Balt.*, 293 F. Supp. 3d at 8 (citing 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 2002). Courts only dismiss without leave to replead if the evidence shows the pleader cannot truthfully amend to allege subject-matter jurisdiction. *Id.* But IFC does not show this or otherwise deny the facts alleged.

### a. Plaintiffs adequately allege that IFC's approval of the loan was negligent.

The Court found that the approval of the loan was not the gravamen of Plaintiffs' complaint because "they do not make specific allegations that approving the funding – by itself – was a negligent act." ECF No. 61 at 18.[8] The Court did not find that the approval of the loan *could not* be the gravamen of the claim. Plaintiffs have now made specific allegations showing the approval itself was negligent. Mot. at 8-10. Ignoring most of these allegations, IFC argues, citing one paragraph, AC ¶ 217, that Plaintiffs merely quote the definition of Category A projects, and that therefore the Amended Complaint adds nothing to Plaintiffs' prior argument. Opp. at 16. Not so.

First, the Amended Complaint does not allege that IFC was negligent solely because it funded a Category A project. IFC was negligent for: funding a project that it knew could cause harm that could not be mitigated, AC ¶ 217; not having an adequate plan in place to remedy the harms they could mitigate, AC ¶ 218; and doing insufficient and defective due diligence prior to approving the loan, despite knowing the extreme dangers of the Project. AC ¶¶ 220-25. Plaintiffs have laid out in great detail the project review, decision-making, and approval process that occurred at IFC's

---

21 ("plaintiffs never allege that the decision to make those subsequent disbursements occurred in the United States."); *id.* at 21-22 (finding allegation regarding IFC's responses to harms "is a general and ambiguous allegation insufficient to shift the gravamen of the complaint to the United States").

[8] Plaintiffs had intended the original Complaint to make clear the funding alone was negligent. *See* Mot. at 9 & n.6.

headquarters in Washington, D.C. prior to Board approval that produced the failures in due diligence and mitigation plans, and ultimately the negligent funding of the Project. AC ¶¶ 198-215.

Second, paragraph 217 does not quote the Category A definition at all. Category A projects are those with potential significant adverse "social and/or environmental impacts that are diverse, irreversible, or unprecedented." AC ¶ 216. Paragraph 217 quotes IFC's Environmental and Social Manual, which makes clear that IFC's internal procedures call for an extra level of review, a Peer Review Meeting, when a project meets the Category A definition *and* the effects "*can be only partially addressed through mitigation measures.*" AC ¶ 217 (citing ECF No. 22-5 at 220) (emphasis added).[9] Thus, Plaintiffs have now alleged that *on top of being a Category A Project*, the Tata Mundra Project was, and was known to be, one with effects that could not be mitigated. AC ¶¶ 208, 217.

Given this, IFC's claim that the Amended Complaint is "indistinguishable" from Plaintiffs' prior argument is wrong. As IFC concedes, Plaintiffs previously argued that IFC knew the project "'would substantially harm [Plaintiffs] *if sufficient steps were not taken to address critical issues.*'" Opp. at 16 (quoting ECF No. 45 at 3-4) (emphasis added). There is an obvious difference between a project that will cause harms if nothing is done later, and one that cannot be fully mitigated no matter what is done later. This was a Category A project where the risks that could be mitigated were not properly addressed or planned for, AC ¶¶ 216, 218, but the Amended Complaint alleges it was *also* a project that would harm Plaintiffs regardless of any later efforts, AC ¶ 217, and that IFC's decision to fund such an inherently harmful project was negligent standing alone. AC ¶¶ 188, 216, 370.

Because Plaintiffs have alleged with specificity why the approval of the loan – by itself – was negligent, the Court should consider that approval in analyzing the gravamen of Plaintiffs' suit.

**b. Plaintiffs have adequately alleged that IFC's oversight of the design, construction, and operation of the Tata Mundra Project occurred in the**

---

[9] AC ¶¶ 208 and 217 include a quotation that is in the record. ECF No. 22-5 at 220. Although Plaintiffs' Amended Complaint footnotes the record evidence, Plaintiffs inadvertently neglected to provide the citation in AC ¶ 217, but did provide the citation in AC ¶ 208.

**United States.**

The Court found that "[t]he complaint does not allege that IFC's direct involvement in the design, construction, and operation of the power plant occurred in Washington, D.C.," and identified specific gaps where it found Plaintiffs did not allege IFC's acts took place in the United States. ECF No. 61 at 20. IFC does not dispute that the Amended Complaint alleges that the oversight of the Project was done by IFC in Washington. Mot. at 10-13; AC ¶¶ 226-50, 259-65. Since this is sufficient under the framework the Opinion set out, amendment is not futile.

IFC's assertion that Plaintiffs' Amended Complaint cites some exhibits Plaintiffs had already cited ignores the fact that the Opinion focused on inadequacies in the *Complaint*. Opp. at 17. It did not hold that the entire record was inadequate. Thus, it is irrelevant whether some of the new allegations reflect facts in the record; the question is whether the Amended Complaint is adequate.

Regardless, while some new allegations reflect facts in the record, others do not. For example, while AC ¶ 234 cites ECF No. 22-5 in noting that the CESIG/CESI Manager is responsible for approving any "waivers" of any of the environmental and social conditions, it alleges, independent of the record, that the Manager for this Project was based in D.C. Similarly, AC ¶ 249 alleges that the person with authority over actions regarding non-compliant projects was the Vice President of Operations in D.C.

IFC's claim that Plaintiffs have not shown the level of "involvement" required to "shift the gravamen to the United States," Opp. at 17, also fails. The Court found that the gravamen of the case was the oversight of the design, construction, and operation of the plant, and that Plaintiffs had not adequately alleged where this happened. ECF No. 61 at 20. The issue was the *location* of that conduct, not the *type* of conduct. The Court noted specifically what it found Plaintiffs did not allege, which is most plausibly understood as an explanation of what allegations suffice. *See id.* ("For example, [the complaint] does not allege that IFC's failure to ensure CGPL's compliance with the

loan agreement's provisions, or its approval of certain negligent designs or construction plans, or its failure to adequately monitor or supervise the plant were 'carried on' in the United States.").[10]

The Amended Complaint alleges precisely those facts. Plaintiffs' new allegations provide the Court with the information sufficient to fill the gaps identified regarding the location of IFC's conduct and demonstrate in great detail that IFC's oversight of the design, construction, and operation of the Tata Mundra Project occurred in the United States.

### c. Plaintiffs have alleged that IFC's decisions in response to the allegations of harm caused by the Tata Mundra Project occurred in the United States.

The Court found that Plaintiffs' allegation that "IFC's responses to allegations of harm" took place in the United States was ambiguous; "[i]t is not clear what plaintiffs mean by 'responses to allegations of harm'" or "what kind of conduct" took place here. ECF No. 61 at 21-22. The amendments clarify that IFC's "responses" refers to *all* of IFC's responses, including its decision to *do nothing*. AC ¶ 251. IFC somehow reads the Amended Complaint as suggesting that IFC's "overall response" refers only to its receipt of Plaintiffs' CAO complaint and meetings with "civil society organizations," Opp. at 18, but it explicitly says the opposite: IFC's responses "include more than just its responses *to* the CAO and to the CAO Audit Report. IFC headquarters [in Washington] also decided, directed and/or approved IFC's failure to act to ameliorate or avoid the harms." AC ¶ 251 (emphasis original).

IFC claims its written response to the CAO is the only "affirmative" response alleged. Opp. at 18. But IFC's decision to ignore the harm to Plaintiffs and refusal to exercise its power to mitigate the harms it created was a continuous decision made by IFC in Washington.[11] It makes no difference

---

[10] IFC cites a hypothetical the Court presented in a footnote in a different part of the Opinion, while ignoring the Court's statement, quoted above, in the relevant discussion.

[11] For example, as a part of the oversight process, IFC staff in Washington reviewed Annual Monitoring Reports submitted by CGPL which over the course of four years revealed that CGPL

whether that is considered an affirmative act or an omission; either way it is tortious conduct in the United States. Regardless, IFC's failure to mitigate was also accompanied by other affirmative, negligent conduct, such as approving the final construction plans, AC ¶ 239, and disbursing subsequent tranches of the loan despite CGPL's poor environmental and social compliance. AC ¶ 164.

The CAO process was another of IFC's opportunities to require CGPL's compliance with its environmental and social requirements. Here too, IFC's response was to take no remedial action. AC ¶¶ 155, 259.

In short, the Amended Complaint clarifies that "responses to allegations of harm" include all of IFC's institutional decisions to not mitigate, reduce, and prevent harm to Plaintiffs, and their acts to move the project forward despite their knowledge of the harms. AC ¶ 251. These decisions and acts were made by the highest-level IFC staff in Washington, D.C. AC ¶ 250, 259-266. These facts further show the gravamen of the Plaintiffs' suit is in the United States.

## II.     Alternatively, the Court should grant reconsideration.

The Opinion extrapolated from part of the record to find key IFC conduct "likely occurred in India," but overlooked evidence showing that it *actually* occurred here. Mot. at 15-16 (quoting ECF No. 61 at 20). While amendment is the best way to ensure consideration of *all* relevant jurisdictional facts, Plaintiffs also move for reconsideration to consider facts in the record that the Opinion did not address. Indeed, IFC repeatedly argues against amendment by pointing to the record. While IFC's arguments do not preclude amendment, they do highlight that the Court should not dismiss without considering the record in its entirety.

IFC does *not* dispute that this conduct occurred in the United States. Instead, it argues that

---

was emitting air pollution well above its allowed levels. AC ¶¶ 242-244. Those at IFC with authority to do so nonetheless did not take corrective action and mitigate the harm to Plaintiffs. AC ¶ 250.

Plaintiffs must meet Rule 59(e). Opp. at 11. But as noted above, the Opinion is not a final judgment, so just as Plaintiffs need not satisfy Rule 59(e) to amend, that rule also does not apply to reconsideration.

### III.    If necessary, Plaintiffs satisfy Rule 59(e).

If the Opinion was a final judgment that does not permit amendment, Plaintiffs move under Rule 59(e) to alter that judgment, with respect to both their motion to amend and their motion for reconsideration. Mot. at 6-7. Plaintiffs meet the standard for amendment under Rule 59(e), as set forth in *Brink v. Continental Insurance Co.*, 787 F.3d 1120 (D.C. Cir. 2015). *See* Mot. at 6-8. IFC ignores *Brink*, and instead seeks to apply the Rule 59(e) standard applicable where the motion seeks *reconsideration* of the underlying judgment. Opp. at 5. Plaintiffs need not meet that standard to amend their Complaint. Regardless, they do so, both because of the need to correct clear error and to prevent injustice. Thus, Plaintiffs satisfy Rule 59(e) with respect to their motion for reconsideration as well as their motion to amend.

### A.  Plaintiffs meet the *Brink* test for Rule 59(e) motions to amend the complaint.

*Brink* held that a Rule 59(e) motion to amend the complaint "should be granted unless 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" 787 F.3d at 1128-29 (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)). *Accord Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006).[12] Failure to do so is an abuse of discretion. *Brink*, 787 F.3d at 1128. *Brink* raises a "high bar" against denying amendment. *Id.* at 1129.

Plaintiffs showed in detail how additional facts consistent with the complaint will "cure the deficiency" this Court found. Mot. at 8-15. The Court never suggested that Plaintiffs "could not possibly" do so; on the contrary, by noting the gaps, it suggested the allegations that would suffice.

---

[12] This mirrors Rule 15's futility standard. *See Brink*, 787 F.3d at 1128 (applying "liberal intent of Rule 15(a)(2)); *Morse*, 290 F.3d at 799 ("the Rule 15 and Rule 59 inquiries turn on the same factors").

Since Plaintiffs have now filled those gaps, *Brink* requires that Plaintiffs' motion be granted.

IFC's assertion that Plaintiffs must satisfy Rule 59(e) even if dismissal was without prejudice misses the point. Opp. at 7-8. Plaintiffs satisfy Rule 59(e) under *Brink*.

While IFC would require Plaintiffs to show clear error, *Brink* makes clear the Opinion need not have been mistaken in identifying defects in the Complaint. The question is whether any defects can be fixed.[13] Moreover, if the Opinion was a final order, it was error to prevent Plaintiffs from amending. Mot. at 6-8; *see also Blue Water Balt.*, 293 F. Supp. 3d at 8 (courts permit amendment where record supports jurisdiction). This Court should grant Plaintiffs' combined Rule 59(e)/Rule 15 motion for the same reasons it did so in *City of Dover*, 40 F. Supp. 3d 1. Mot. at 8. IFC notes only that the Court rejected amendment with respect to the two dismissed claims, Opp. at 7, which it did because "amendment would have been futile," since "plaintiffs could not possibly" have alleged additional facts that would "cure" those claims. *Dover*, 40 F. Supp. 3d at 5-6. That is not so here. And IFC ignores the fact that the Court in *Dover* allowed plaintiffs to amend not just a new legal theory, but *also* "new facts" that "provide[d] more detail and clarity" and "fill[ed] in gaps" in the previous complaint. *Id.* at 6 n.3.

**B. Plaintiffs allege clear error sufficient to warrant reconsideration.**

Reconsideration should be granted even under Rule 59(e) because the finding that certain conduct occurred in India based on record evidence, without considering contrary record evidence, was clear error. IFC claims Plaintiffs "identify no factual error," Opp. at 8, but the assumption that the conduct occurred in India was mistaken. This, and the fact that a court should not draw inferences from some evidence without considering the rest, warrants reconsideration so that the

---

[13] In *City of Dover v. United States EPA*, 40 F. Supp. 3d 1, 5 (D.D.C. 2013), this Court considered *Firestone* as an application of the clear error inquiry. But it makes no difference whether the *Brink*/*Firestone* rule is considered as such or as separate test. Either way, that rule provides the standard.

Court can address the record evidence the Opinion did not consider.

IFC cites *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013), arguing "mere disagreement" with the decision is not clear error, Opp. at 7, but Plaintiffs' argument here is completely different. In *Mohammadi,* the plaintiffs "disagree[d] with the Court's application" of the controlling case; while appealable, that disagreement did not constitute clear error, and "would not cure" the defect. 947 F. Supp. 2d at 84. Here, by contrast, consideration of facts in the record that contradict the assumptions the Court drew from other record evidence *can* cure the key deficiency the Court identified: where IFC's tortious conduct occurred.

Plaintiffs plainly do not seek to raise arguments that should have been presented prior to the Court's decision. Opp. at 8. Because the Opinion turned on issues IFC had not argued, Plaintiffs had no reason to identify record evidence addressing these issues. While record evidence directly responds to issues the Court identified, Mot. at 15-16, these documents were put in the record for different purposes.[14] Likewise, because IFC never made these arguments Plaintiffs are not trying to "relitigate old matters." Opp. at 8. Plaintiffs seek their first bite at the apple, not their second.

Finally, IFC suggests the Court could not have erred in failing to consider record facts that Plaintiffs did not plead or raise, Opp. at 8, but the Court *did* consider certain record evidence. Reconsideration is warranted to allow the Court to consider other record evidence that the Opinion did not address.[15] Ultimately, however, it does not matter whether the Court should have considered the entire record, or only the allegations of Plaintiffs' Complaint. If it was proper to consider only Plaintiffs' allegations, the appropriate step is to allow amendment of the allegations to reflect facts in

---

[14] Many of these documents were put in the record by the parties in briefing IFC's First Motion to Dismiss, when IFC made no commercial activity argument *at all.*

[15] IFC cites *Ali v. Carnegie Inst. Of Wash.*, 309 F.R.D. 77, 83 (D.D.C. 2015), which recognized reconsideration of "a decision premised on factual error" is appropriate. There, unlike here, the plaintiff possessed but "chose not to provide" the Court with the evidence it said showed a factual error until after it ruled, and the evidence was meritless. *Id.*

the entire record. *Blue Water Balt.*, 293 F. Supp. 3d at 8. If instead the Court should have considered

the entire record, then reconsideration is warranted. IFC cannot defeat jurisdiction by relying on

procedural games to ignore the evidence showing it committed its tortious acts in the United States.

### C.   Reconsideration is necessary to prevent manifest injustice to Plaintiffs

Reconsideration of the Opinion is warranted here to "prevent manifest injustice." *Leidos, Inc.*

*v. Hellenic Republic*, 881 F. 3d 213, 217 (D.C. Cir. 2018) (internal quotations omitted). Where the

judgment would result in "clear and certain prejudice" to the movant that is "fundamentally unfair,"

reconsideration is appropriate. *Id.* (citing *Mohammadi*, 947 F. Supp. 2d at 78) (internal quotations

omitted). If this Court were to adopt a legal standard neither party urged without allowing Plaintiffs

to present facts that meet that standard, that would be fundamentally unfair.

A "Rule 59(e) motion performs a valuable function where a court . . . made a decision

outside the adversarial issues presented." *Cty. Materials Corp. v. Allan Block Corp.*, 436 F. Supp. 2d 997,

999 (W.D. Wisc. 2006); *see also Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C.

2005). Here, the Court adopted neither side's position, such that the Opinion turned on issues

outside those the parties presented. Regardless of whether the Court's interpretation of the legal

standard was erroneous, applying it without permitting Plaintiffs to present facts to meet that

standard would be unjust. That Plaintiffs had "notice that the gravamen of their suit would be a

material issue," Opp. at 9, misses the point. Plaintiffs responded to each of IFC's arguments; they

were not required to think of arguments IFC did not raise and respond to them, too.

IFC nonetheless argues any prejudice to Plaintiffs is "self-inflicted" because they could have

amended their complaint earlier, citing *Mohammadi*, 947 F. Supp. 2d at 81. But there, despite being

"afforded multiple chances" to establish subject-matter jurisdiction, the plaintiffs had "forfeited"

legally theories they raised in earlier iterations of the complaint, but subsequently abandoned and

removed from later amended versions. *Id.* at 80-81. As noted above, Plaintiffs here had no reason to

20

amend until the Court announced the standard under which these allegations were relevant.

IFC has never denied that it committed the tortious conduct at issue in the United States. Because a holding contrary to the undisputed evidence, without affording Plaintiffs an opportunity to respond, would unfairly prejudice them, reconsideration is warranted.

**IV.    Jurisdictional discovery may be appropriate to supplement Plaintiffs' allegations.**

IFC contends that discovery cannot be ordered after dismissal, and is only available to verify Plaintiffs' allegations. Opp. at 18-20. Neither contention is correct. While the need for discovery is lessened by IFC's acceptance of the facts alleged, discovery may be appropriate if the Court finds that Plaintiffs' allegations need greater specificity or other supplementation.

IFC cites no case holding that jurisdictional discovery cannot be ordered after dismissal, and courts have not suggested that this is prohibited. *E.g.*, *Wood v. United States*, 845 F.3d 123, 132 (4th Cir. 2017) (considering the merits of a post-dismissal request for discovery); *BP Chems., Ltd., v. Jiangsu Sopo Corp.*, 285 F.3d 677, 688 (8th Cir. 2002) (declining to consider post-dismissal motions to amend and for discovery under FSIA because the dismissal was error). Such a rule would make no sense where the need for discovery became apparent only upon the Opinion's issuance. Plaintiffs could not have sought discovery previously because where IFC's acts occurred "would not change [the] analysis" under either IFC's 2015 or 2019 dismissal arguments. *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017).

Citing Second Circuit caselaw, IFC also contends that discovery can only be ordered to verify facts alleged. Opp. at 19. The fact that IFC does not contradict any of the proposed allegations removes much of the *need* for discovery, but it does not undermine the basis for it. In this District, courts allow jurisdictional discovery where "the plaintiff presents non-conclusory allegations that, *if supplemented with additional information*, will materially affect the court's analysis with regard to the applicability of the FSIA." *Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 274

(D.D.C. 2008) (emphasis added) (internal quotations omitted).[16] Thus even if IFC does not challenge Plaintiffs' allegations, discovery is appropriate (and necessary) if the Court finds that the facts alleged would defeat dismissal if supplemented by information in IFC's possession. This may be so, for example, if the Court finds the allegations to be too general, but where more specific allegations – which can only be based on information exclusively available to IFC – could establish the basis for jurisdiction.

## CONCLUSION

This Court's Opinion established a framework for considering where the gravamen of the action lies. The Court should grant Plaintiffs leave to amend so that it can apply its framework to the real and undisputed facts of this case.

Dated: April 2, 2020

Respectfully submitted,

*/s/ Richard L. Herz*

Richard L. Herz (*pro hac vice*)*
Marco B. Simons (D.C. Bar No. 492713)
Michelle C. Harrison (D.C. Bar No. 1026592)
EARTHRIGHTS INTERNATIONAL
1612 K St. NW Suite 800
Washington, DC 20006

*Counsel for Plaintiffs*

---

[16] *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000), does not hold that discovery is barred where the defendant does not challenge the factual allegations – only that it *must* be allowed where jurisdiction depends on contested facts. *Id.* at 40.

*Based in CT; admitted in NY; does not practice in DC's courts.

22